# No. 08-41083

### No. 08-41180 and No. 08-41232

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**SHARON TAYLOR, ET AL**,

**Plaintiffs/Appellants;**

**v.**

**ACXIOM CORPORATION, ET AL,**

**Defendants/Appellees.**

## On Appeal from the United States District Court
### for the Eastern District of Texas in Civil Action Nos.
### 2:07-cv-01, 2:07-cv-13, 2:07-cv-14, 2:07-cv-17, 2:07-cv-18, 2:07-cv-410

# BRIEF OF APPELLANTS

JEREMY R. WILSON
State Bar No. 24037722
THE COREA FIRM, P.L.L.C.
The Republic Center
325 North St. Paul Street, Suite 4150
Dallas, Texas 75201
Tel: 214.953.3900
Fax: 214.953.3901

ANDY TINDEL
State Bar No. 20054500
PROVOST✶UMPHREY LAW FIRM
112 E. Line Street, Suite 304
Tyler, Texas 75702
Tel: 903.596.0900
Fax: 903.596.0909
Email: atindel@andytindel.com

## ATTORNEYS FOR APPELLANTS

# <u>CERTIFICATE OF INTERESTED PARTIES</u>

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

A.    Plaintiffs/Appellants:

**Sharon Taylor, James Douglas Booker, Willie B. Booker, Lowry Briley, Twilah Brown, James D. Clary, Sharon A. Clary, Alice M. Cooks, Arlando Cooks, Elizabeth Dewitt, Kenneth Gossip, Sr., Kennice Gossip, Pamela Hensley, Robert G. Holliness, Carolyn Latham Holub, Brandi Jewell, Tracy Karp, Venisia Booker McGuire, David Patterson, Ronnie Phillips, James Roberts, Luz Ann Roberts, Kimberly Dawn Underwood, Marilyn Whitaker and William "Troy" Wilson**

> Andy Tindel
> Provost ✶ Umphrey Law Firm, LLP
> 112 E. Line Street, Suite 304
> Tyler, Texas 75702
>
> James Mark Mann
> The Mann Firm
> 300 W. Main
> Henderson, TX 75652
>
> Gregory Blake Thompson
> The Mann Firm
> 300 W. Main
> Henderson, TX 75652
>
> Jeremy Reade Wilson
> The Corea Firm, PLLC
> The Republic Center
> 325 North St Paul Street, Suite 4150
> Dallas, TX 75201

Thomas Mathew Corea
The Corea Firm, PLLC
325 North St Paul Street, Suite 4150
Dallas, TX 75201

George A. Otstott
Otstott & Jamison, PC
4849 Greenville Avenue, Suite 1620
2 Energy Square
Dallas, TX 75206

Ann Jamison
Otstott & Jamison, PC
4849 Greenville Avenue, Suite 1620
2 Energy Square
Dallas, TX 75206

B.    Defendants/Appellees:

**Acxiom Corporation**

James Patrick Kelley
Ireland Carroll & Kelley
6101 S Broadway, Suite 500
Tyler, TX 75703

Barry Rodney Davidson
Hunton & Williams - Miami
1111 Brickell Avenue, Suite 2500
Miami, FL 33131

**Choicepoint Public Records Database Tech Inc., Choicepoint Public Records Inc., Choicepoint, Inc., ChoicePoint Services, Inc., Seisint, Inc., Lexisnexis Reed Elsevier, Inc.**

David J Beck
Beck Redden & Secrest
1221 McKinney Street, Suite 4500
One Houston Center

Houston, TX 77010-2020

George Barton Butts
DLA Piper US LLP - Austin
1221 S MoPac Expressway, Suite 400
Austin, TX 78746

**Chex Systems, Inc.**

Alan Neil Greenspan
Jackson Walker
901 Main Street, Suite 6000
Dallas, TX 75202-3797

James M Walls
Carlton Fields PA
P O Box 3239
Tampa, FL 33601-3239

**ACS State & Local Solutions, Inc.**

Larry Farish York
McGinnis, Luchridge & Kilgore
600 Congress Avenue, Suite 2100
Austin, TX 78701

**Gila Corporation**

Wallace Morgan Smith
Smith Robertson Elliott Glen Klein & Bell
221 West 6th Street, Suite 1100
Austin, TX 78701

**American Electric Power Service Corporation**

Stayton L Worthington
Coghlan Crowson, LLP
1127 Judson Rd, Suite 211
P O Box 2665
Longview, TX 75606-2665

**Southwestern Bell Telephone, LP d/b/a Southwestern Bell Telephone Company**

    Philip J John
    Baker Botts - Houston
    910 Louisiana
    Suite 3000 One Shell Plaza
    Houston, TX 77002-4995

    Aaron Michael Streett
    Baker Botts - Houston
    910 Louisiana
    Suite 3000 One Shell Plaza
    Houston, TX 77002-4995

    Chad Michael Pinson
    Baker Botts - Dallas
    2001 Ross Avenue, Suite 600
    Dallas, TX 75201-2980

**American Municipal Services Corporation**

    Hastings L. Hanshaw
    Hanshaw Kennedy, LLP
    1125 Legacy Drive, Suite 250
    Frisco, TX 75034

**Texas Farm Bureau Mutual Insurance Company**

    Roger Dale Higgins
    Thompson, Coe, Cousins & Irons
    700 N Pearl Street, 25th Floor
    Dallas, TX 75201-2832

    Daniel Paul Buechler
    Thompson, Coe, Cousins & Irons
    700 N Pearl Street, 25th Floor
    Dallas, TX 75201-2832

**Insurance Technologies Corporation**

>Charles L Perry
>Andrews & Kurth - Dallas
>1717 Main Street, Suite 3700
>Dallas, TX 75201

**JI Specialty Services, Inc.**

>Joel Evans Geary
>Vincent Moye PC - Dallas
>2001 Bryan Street, Suite 2000
>Dallas, TX 75201

**Softech International, Inc.**

>Amanda Aline Abraham
>The Roth Law Firm
>115 N. Wellington, Suite 200
>P.O. Box 876
>Marshall, TX 75671-0876

**Globe Life & Accident Insurance Company**

>Kirsten Marisol Castaneda
>Locke Lord Bissell & Liddell LLP - Dallas
>2200 Ross Avenue, Suite 2200
>Dallas, TX 75201-6776

**Hawkeye Insurance Services, Inc.**

>Jeffery Mark Kershaw
>Chamblee & Ryan
>2777 N Stemmons Freeway, Suite 1157
>Dallas, TX 75207

**ISO Claims Services, Inc. d/b/a Insurance Information Exchange**

Mark W Bayer
Gardere Wynne Sewell - Dallas
1601 Elm Street
3000 Thanksgiving Tower
Dallas, TX 75201

**United Teacher Associates Insurance Company**

Donald R Taylor
Taylor Dunham & Burgess
301 Congress Avenue, Suite 1050
Austin, TX 78701

**Spartan Insurance Company**

Jerry Lee Ewing, Jr.
Walters Balido & Crain - Dallas
900 Jackson Street, Suite 600
Dallas, TX 75202

**Safeway, Inc.**

Aaron Michael Streett
Baker Botts - Houston
910 Louisiana
Suite 3000 One Shell Plaza
Houston, TX 77002-4995

Elizabeth Eve Baker
Baker Botts - Houston
910 Louisiana
Suite 3000 One Shell Plaza
Houston, TX 77002-4995

**HEB Grocery Company, LP**

Aaron Michael Streett
Baker Botts - Houston
910 Louisiana

Suite 3000 One Shell Plaza
Houston, TX 77002-4995

Chad Michael Pinson
Baker Botts - Dallas
2001 Ross Avenue, Suite 600
Dallas, TX 75201-2980

**The Hearst Corporation d/b/a Houston Chronicle**

William Wesley Ogden
Ogden Gibson Broocks & Longoria
711 Louisiana
1900 Pennzoil South Tower
Houston, TX 77002

Jonathan R. Donnellan
The Hearst Corporation
300 West 57th Street, 40th Floor
New York, NY 10019

**Safety-USA Institute, LLC**

James Richard Tubb
J Richard Tubb-PLLC
8117 Preston Road, Suite 300
Dallas, TX 75225

**U.S. Interactive, Inc.**

Walter J Cicack
Seyfarth Shaw - Houston
700 Louisiana, Suite 3700
Houston, TX 77002

Michael Charles Smith
Siebman Reynolds Burg Phillips & Smith, LLP-Marshall
713 South Washington
Marshall, TX 75670

**The Talbot Group, Inc.**

David Joseph White
Godwin Pappas Ronquillo LLP
1201 Elm Street, Suite 1700
Dallas, TX 75270-2084

**Background Information Systems, Inc.**

Aaron Michael Streett
Baker Botts - Houston
910 Louisiana
Suite 3000 One Shell Plaza
Houston, TX 77002-4995

Chad Michael Pinson
Baker Botts - Dallas
2001 Ross Avenue, Suite 600
Dallas, TX 75201-2980

**CarFax, Inc.**

Kirk Todd Florence
Crouch & Ramey
1445 Ross Ave
Suite 3600
Dallas, TX 75202

Christopher M Mason
Nixon Peabody LLP - NY
437 Madison Avenue
New York, NY 10022

**ABC Data**

Silvie George Alfonso
Attorney at Law
5340 Alpha Road
Dallas, TX 75240

**American Student List Company, Inc.**

    Stephen Sanders Maris
    Hunton & Williams
    1445 Ross Avenue, Suite 3700
    Dallas, TX 75202

**Aristotle International, Inc.**

    Alexandra C Warren
    Cuneo Gilbert & LaDuca LLP
    507 C Street, NE
    Washington, DC 20002

**Continueded.com, LLC**

    James Warren Grau
    Grau Koen - Dallas
    2711 N Haskell, Suite 2000
    Dallas, TX 75204

**Driver Training Associates, Inc.**

    J. Randy Burton
    The Burton Law Firm
    440 Louisiana #1300
    Houston, TX 77002

**Federated Retail Holdings, Inc.**

    Catherine Sison
    Macy's Retail Holdings, Inc.
    611 Olive Street, Suite 1750
    St Louis, MO 63101

    Gayla Campbell Crain
    Spencer Crain Cubbage Healy & McNamara
    1201 Elm Street
    Suite 4100 Lock Box 50
    Dallas, TX 75270

Fred Gaona
Spencer Crain Cubbage Healy & McNamara
1201 Elm Street
Suite 4100 Lock Box 50
Dallas, TX 75270

**Household Drivers Report, Inc.**

Carlos Alberto Balido
Walters Balido & Crain - Dallas
900 Jackson Street, Suite 600
Dallas, TX 75202

**Lee Farish Computer Services, Inc.**

Paul Craig Laird, II
Ashley & Laird, LC
800 West Airport Freeway
Suite 880 LB6015
Irving, TX 75062

**Paradise Development, Inc.**

James Richard Tubb
J Richard Tubb-PLLC
8117 Preston Road, Suite 300
Dallas, TX 75225

**RealPage, Inc.**

Aaron Michael Streett
Baker Botts - Houston
910 Louisiana
Suite 3000 One Shell Plaza
Houston, TX 77002-4995

Charles C. Frederiksen
Glast, Phillips & Murray
13355 Noel Road, Suite 2200, LB 48

1 Galleria Tower
Dallas, TX 75240

Chad Michael Pinson
Baker Botts - Dallas
2001 Ross Avenue, Suite 600
Dallas, TX 75201-2980

**D.B. Stringfellow, Jr.**

John E Collins
Burleson Pate & Gibson
2414 N Akard Street, Suite 700
Dallas, TX 75201

**Tenant Tracker, Inc.**

Richard M. Abernathy
Abernathy, Roeder, Boyd & Joplin
1700 Redbud Boulevard, Suite 300
McKinney, TX 75069

**Biometric Access Company**

Jennifer Haltom Doan
Haltom and Doan
6500 Summerhill Road
Crown Executive Center Suite 100
P O Box 6227
Texarkana, TX 75505

**Certegy Check Services, Inc.**

Alan Neil Greenspan
Jackson Walker
901 Main Street, Suite 6000
Dallas, TX 75202-3797

**Emaginenet Technologies, Inc.**

Douglas Eugene Koger
Douglas E. Koger-Attorney at Law
14090 Southwest Freeway #300
Sugarland, TX 77478

## LML Payment Systems Corp.

Craig Alan Haynes
Thompson & Knight - Dallas
1722 Routh Street, Ste 1500
Dallas, TX 75201-2533

## Telecheck Services, Inc.

David G Russell
Parker Hudson Rainer & Dobbs, LLP
1500 Marquis Two Tower
285 Peachtree Center Avenue NE
Atlanta, GA 30303

Elizabeth L DeRieux
Capshaw DeRieux, LLP
1127 Judson Road, Suite 220
Longview, TX 75601-5157

## Allied Resident/Employee Screening Service, Inc.

Brian C Jobe
Wimer & Jobe
13455 Noel Road, Suite 1000
Dallas, TX 75240

## U.S. Interactive, Inc.

Walter J Cicack
Seyfarth Shaw - Houston
700 Louisiana, Suite 3700
Houston, TX 77002

## Acxiom Risk Mitigation, Inc.

James Patrick Kelley
Ireland Carroll & Kelley
6101 S Broadway, Suite 500
Tyler, TX 75703

**ADP Screening and Selection Services, Inc.**

Robin Leaf Harrison
Campbell, Harrison & Dagley, LLP
4000 Two Houston Center
909 Fannin Street
Houston, TX 77010

**American Driving Records, Inc.**

Aaron Michael Streett
Baker Botts - Houston
910 Louisiana
Suite 3000 One Shell Plaza
Houston, TX 77002-4995

**COE Information Publishers, Inc.**

Michael L Bernoudy
The Bernoudy Law Firm
2660 E. End Blvd., Suite 110
Marshall, TX 75672

**FedChex, LLC**

Stephen Douglas Henninger
Martin, Disiere, Jefferson & Wisdom
900 Jackson Street, Suite 710
Dallas, TX 75202

**Jon Latorella**

Robert M Strasnick
Andrews & Updegraph

70 Washington Street, Suite 212
Salem, MA 01970

**Marshall Systems Technology, Inc.**

Tristan Belew Ellis
T. Belew Ellis
Attorney at Law
P. O. Box 802
Marshall, TX 75671-0802

**Source Data, Inc.**

Robert Langdon Ramey
Ramey & Chandler
750 Bering Drive, Suite 600
Houston, TX 77057

**URAPI**

John E Collins
Burleson Pate & Gibson
2414 N Akard Street, Suite 700
Dallas, TX 75201

**PropertyInfo Corporation**

Jeffrey R Elkin
Porter & Hedges - Houston
1000 Main Street, 36th Floor
Houston, TX 77002-6336

**Freeman Publishers, Inc.**

Brock C Akers
Phillips & Akers
3200 Southwest Frwy, Suite 3200
Houston, TX 77027-7523

**Defensivedriving.com**

John Michael Dorman
Locke Lord Bissell & Liddell LLP
600 Travis Street, Suite 3400
Houston, TX 77002-3004

**Cross-Sell, Inc.**

William W Allen
Gess Mattingly & Atchison
201 West Short Street
Lexington, KY 40507

**InfoNation, Inc.**

Marvin C Moos
Ebanks Taylor Horne LLP
1301 McKinney, Suite 2700
Houston, TX 77010-3079

**Realty Computer Solutions, Inc. d/b/a Real-Comp**

Paul M Boyd
Boyd & Brown
1215 Pruitt Place
Tyler, TX 75703

Alan E. Brown
Boyd & Brown
1215 Pruitt Place
Tyler, TX 75703

**National Statistical Service Corporation**

Michael Porter Heiskell
Johnson Vaughn & Heiskell
5601 Bridge Street
Fort Worth, TX 76112

**Reliant Energy, Inc.**

Eric P Chenoweth
Yetter, Warden & Coleman, LLP
909 Fannin, Suite 3600
Houston, TX 77010

**TXU Business**

Dwight M Francis
Gardere Wynne Sewell - Dallas
1601 Elm St
3000 Thanksgiving Tower
Dallas, TX 75201

**Dallas Computer Associates**

J. Stephen Hunnicutt
Hunnicutt Law Firm
12720 Hillcrest Road, Suite 750
Dallas, TX 75230

**ImpactInfo, Inc.**

Richard Andro (Pro Se)
2044 Needham Drive
Allen, TX 75013

**WishList, LLC**

Carolyn Lehmann (Pro Se)
1309 Stonewall St
New Braunfels, TX 78130

**Just Texas**

Thomas D. Hoffman (Pro Se)
605 Cooper St.
Ennis, TX 75119-5203

**Zebec Data Systems, Inc.**

      Marvin C Moos
      Ebanks Taylor Horne LLP
      1301 McKinney, Suite 2700
      Houston, TX 77010-3079


      _____
      ANDY TINDEL
      Attorney for Plaintiffs/Appellants

# STATEMENT REGARDING ORAL ARGUMENT

Appellants believe that oral argument of this case would be of significant benefit to the Court in resolving the issues presented by this appeal by enlightening the Court as to the legal errors made in the District Court's rulings. Appellants therefore request the Court to grant oral argument in this case.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES ......................................................i

STATEMENT REGARDING ORAL ARGUMENT ........................................ xviii

TABLE OF CONTENTS.................................................................. xix

TABLE OF AUTHORITIES ............................................................... xxii

STATEMENT OF JURISDICTION........................................................2

STATEMENT OF THE ISSUES........................................................3

STATEMENT OF THE CASE...........................................................3

    1. NATURE OF THE CASE. ....................................................3

    2. COURSE OF PROCEEDINGS AND DISPOSITION BELOW ..................4

STATEMENT OF FACTS ..............................................................14

SUMMARY OF THE ARGUMENT ....................................................21

ARGUMENT AND AUTHORITIES....................................................22

    1. STANDARD OF REVIEW FOR MOTION TO DISMISS
       PURSUANT TO RULE 12(b)(6) ..........................................23

    2. STANDARD OF REVIEW FOR MOTION TO DISMISS
       PURSUANT TO RULE 12(b)(1) ..........................................23

THE DISTRICT COURT ERRED IN GRANTING DEFENDANTS'
CONSOLIDATED MOTION TO DISMISS AND IN *SUA* SPONTE
DISMISSING PLAINTIFFS' CLAIMS AGAINST ALL
REMAINING DEFENDANTS ..........................................................24

    1. PLAINTIFF'S DRIVERS PRIVACY PROTECTION ACT CLAIMS
       AGAINST DEFENDANT SHOULD NOT HAVE BEEN DISMISSED FOR
       FAILURE TO STATE A CLAIM UPON WHICH RELIEF COULD BE
       GRANTED. ..................................................................24

A.    The Non-Seller Defendants violated the DPPA by knowingly obtaining Plaintiffs' personal information from a motor vehicle record for a purpose not permitted under the Act, i.e., the bulk obtainment of personal information contained in motor vehicle records for purposes of Defendants' convenience or cost saving or for Defendants' continued use, in a database or otherwise, as a business resource or in the conduct of ordinary business activities ..................................................28

       (i)    The Plain Language of the DPPA Prohibits Companies From Obtaining ''Motor Vehicle Records" Without a Specific Permissible Purpose for Each Record Obtained.........................................................31

B.    The Reseller Defendants violated the DPPA by knowingly obtaining Plaintiffs' personal information from a motor vehicle record for a purpose not permitted under the Act, i.e., the obtainment of personal information contained in motor vehicle records for purposes of resale or redisclosure ......................................................35

       (i)    *Russell* Incorrectly Interpreted The DPPA As It Applies To Resellers .................................................36

       (ii)   Even if *Russell* is Correct, The State of Texas Has No Resale Authorization Process ............................................41

       (iii)  *Roberts v. Source for Pub. Data* correctly interprets the meaning of "authorized recipient" in section 2721(c) of the DPPA ....................................................44

C.    Plaintiffs' Drivers Privacy Protection Act claims against Defendant should not have been dismissed for lack of standing.............................................................................................49

CONCLUSION ...........................................................................................54

PRAYER ....................................................................................................55

CERTIFICATE OF SERVICE ..................................................................57

CERTIFICATE OF COMPLIANCE........................................................58

# TABLE OF AUTHORITIES

Page(s)

CASES

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ...............................................................................................23

*Brown v. Gardner*, 513 U.S. 115 (1994) ...............................................41

*Center for Individual Freedom v. Carmouche*, 449 F.3d 655 (5th Cir. 2006) .................................................................................................50

*Chao v. Cmty. Trust Co.*, 474 F.3d 75 (3d Cir. 2007) ............................39

*Collier v. Dickinson,* 477 F.3d 1306 (11th Cir. 2007), cert. denied, 128 S. Ct. 869, 169 L. Ed. 2d 724 (2008) ......................................................16

*Davis v. Michigan Dept. of Treasury*, 489 U.S. 803 (1989)...................41

*Federal Election Comm. v. Akins*, 524 U.S. 11 (1998) ..........................53

*Food and Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000)........................................................................................41

*FTC v. lvandel Brothers, Inc.*, 359 U.S. 385 (1959)..............................41

*Gustafson v. Alloyd Co.,* 513 U.S. 561 (1995).......................................41

*In re Imagitas, Inc.,* 2008 U.S. Dist. LEXIS 29183 (M.D. Fla., April 9, 2008) ...........................................................................................16, 40

*Kehoe v. Fid. Fed. Bank & Trust,* 421 F.3d 1209 (11th Cir. 2005)............ 16, 39, 53

*Kennedy v. Chase Manhattan Bank USA, NA,* 369 F.3d 833 (5th Cir. 2004) .................................................................................................23

*Linda R.S. v. Richard D.* 410 U.S. 614, 93 S. Ct. 1146, 35 L. Ed. 2d 536 (1973) .......................................................................................52

*Locate.Plus.Com. Inc. v. Iowa D.O.T,* 650 N.W.2d 609 (Iowa 2002)
...................................................................................... 20,40, 41, 44, 48

*Lovick v. Ritemoney, Ltd.,* 378 F.3d 433 (5th Cir. 2004) .......................................23

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 12 S.Ct. 2130 (1992) ... 50, 51, 53, 54

*Margan v. Niles*, 250 F. Supp. 2d 63 (N.D.NY, 2003)...........................................25

*Parus v. Cator,* 2005 WL 2240955 (W.D.Wis. 2005)............................................52

*Parus v. Allstate Ins. Co*., 2005 U.S. Dist. LEXIS 20183, 2005 WL
2240955 (W.D. Wis. Sept. 14, 2005)........................................................51

*Pilcher v. UNITE*, 542 F.3d 380 (3rd Cir. 2008)..................................................51

*Ramming v. U.S.*, 281 F.3d 158 (5th Cir. 2001) ...................................................24

*Reno v. Condon*, 520 U.S. 141, 120 S.Ct. 666 (2000)...........................................25

*Rivera v. Wyeth Ayerst Labs*, 283 F.3d 315 (5th Cir. 2002)...................................50

*Roberts v. Source for Pub. Data,* 2008 U.S. Dist. LEXIS 100628
(W.D. Mo., Dec. 12, 2008) ..................................................... 44, 45, 46, 47, 48, 49

*Russell v. Choicepoint Serv., Inc.*, *("Russell I")* 300 F. Supp. 2d 450
(E.D.La, 2004) ............................................ 35, 36, 37, 38, 39, 42, 43, 47

*Russell v. Choicepoint Serv., Inc.*, *("Russell II")* 302 F. Supp. 2d 654
(E.D.La, 2004) ............................................ 35, 36, 37, 38, 39, 42, 43, 47

*Stockman v. Federal Election Comm'n*, 138 F.3d 144 (5th Cir. 1998)...................49

*Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, and
Stevens, P.A.*, 525 F.3d 1107 (11th Cir. 2008) ......................................................28

*United States v. Gonzales,* 520 U.S. 1, 117 S. Ct. 1032, 137 L. Ed. 2d
132 (1997) ...............................................................................................40

*Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)...................52

## STATUTES

18 U.S.C. § 2721
............................3, 4, 16, 26, 27, 28, 32, 33, 34, 36, 38, 39, 40, 42, 45, 46, 47, 48, 49

18 U.S.C. § 2722..........................................................................................27, 47

18 U.S.C. § 2723 ...............................................................................................27

18 U.S.C. § 2724.......................................................2, 4, 21, 22, 26, 27, 33, 36, 52

18 U.S.C. § 2725 ........................................................................... 3, 4, 26, 32

28 U.S.C. § 1331 ..................................................................................................2

## RULES

Fed.R.Civ.P. 12(b) ................................................... 21, 22, 23, 24, 50, 54

## SECONDARY AUTHORITY

139 Cong. Rec. S15 (1993)......................................................................25

139 Cong. Rec. S15765 (1993)................................................. 25, 51, 52

183 ALR Fed. 37 § 2...................................................................................25

BLACK'S LAW DICTIONARY 1078, 1268 (6th ed. 1990) .................................48

*Webster's II New College Dictionary* 756, 924-925 (Margery S. Berube *et al*. eds. 1995) .....................................................................37, 48

# No. 08-41083

No. 08-41180 and No. 08-41232

---

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

**SHARON TAYLOR, ET AL**,

Plaintiffs/Appellants;

v.

**ACXIOM CORPORATION, ET AL,**

Defendants/Appellees.

---

On Appeal from the United States District Court
for the Eastern District of Texas in Civil Action Nos.
2:07-cv-01, 2:07-cv-13, 2:07-cv-14, 2:07-cv-17, 2:07-cv-18, 2:07-cv-410

---

# BRIEF OF APPELLANTS

---

TO THE HONORABLE FIFTH CIRCUIT COURT OF APPEALS:

SHARON TAYLOR, JAMES DOUGLAS BOOKER, WILLIE B.
BOOKER, LOWRY BRILEY, TWILAH BROWN, JAMES D. CLARY,
SHARON A. CLARY, ALICE M. COOKS, ARLANDO COOKS, ELIZABETH
DeWITT, KENNETH GOSSIP, SR., KENNICE GOSSIP, PAMELA HENSLEY,
ROBERT G. HOLLINESS, CAROLYN LATHAM HOLUB, BRANDI JEWELL,
TRACY KARP, VENISIA BOOKER McGUIRE, DAVID PATTERSON,

RONNIE PHILLIPS, JAMES ROBERTS, LUZ ANN ROBERTS, KIMBERLY DAWN UNDERWOOD, MARILYN WHITAKER and WILLIAM "TROY" WILSON (collectively "Plaintiffs"), Plaintiffs in the district court and Appellants herein, respectfully submit their Brief of Appellants in the above entitled and numbered appeals. These are appeals taken by Plaintiffs from an original and two amended judgments entered in favor of Defendants (collectively "Defendants"), Defendants in the district court and Appellees herein, by the United States District Court for the Eastern District of Texas, the Honorable Donald E. Walter, sitting by designation ("the District Court" or "Judge Walter"). The Brief of Appellants in opposition to the District Court's judgments would show the Court as follows:

## STATEMENT OF JURISDICTION

The Plaintiffs' actions arose under a federal statute, the Driver's Privacy Protection Act of 1994 ("DPPA"), and the District Court accordingly had jurisdiction over Plaintiffs' claims for relief pursuant to 18 U.S.C. §2724(a) (conferring jurisdiction on the United States District Court for actions under the DPPA) and 28 U.S.C. §1331. This Court has appellate jurisdiction over the District Court's judgments pursuant to 28 U.S.C. §1291.

# STATEMENT OF THE ISSUES

1. Whether the District Court erred in Granting Defendants' Consolidated Motion to Dismiss and in *sua sponte* dismissing Plaintiffs' claims against all remaining Defendants. (RE, Tab J)

   a. Whether Plaintiffs' Drivers Privacy Protection Act claims against Defendants should have been dismissed for failure to state a claim upon which relief could be granted.

      (i) Whether the Non-Seller Defendants violated the DPPA by knowingly obtaining Plaintiffs' personal information from a motor vehicle record for a purpose not permitted under the Act, i.e., the bulk obtainment of personal information contained in motor vehicle records for purposes of Defendants' convenience or cost saving or for Defendants' continued use, in a database or otherwise, as a business resource or in the conduct of ordinary business activities.

      (ii) Whether the Reseller Defendants violated the DPPA by knowingly obtaining Plaintiffs' personal information from a motor vehicle record for a purpose not permitted under the Act, i.e., the obtainment of personal information contained in motor vehicle records for purposes of resale or redisclosure.

   b. Whether Plaintiffs' Drivers Privacy Protection Act claims against Defendants should have been dismissed for lack of standing.

# STATEMENT OF THE CASE

1. ## NATURE OF THE CASE

This appeal arises from the dismissal of six separate civil actions filed as class actions by Plaintiffs alleging violations of the Driver's Privacy Protection Act of 1994, 18 U.S.C. §§2721-2725, by a host of Defendants. Plaintiffs' DPPA violation claims were stated as being brought on their own behalf and on behalf of

all similarly situated individuals whose "personal information" is contained in any "motor vehicle record" maintained by the State of Texas, within the meaning of the DPPA, 18 U.S.C. §2725(1) and (3), who have not provided "express consent," within the meaning of the DPPA, 18 U.S.C. §2725(5) to the State of Texas for the distribution of their "personal information" for purposes not enumerated by the DPPA, 18 U.S.C. §2721(b), and whose "personal information" has been knowingly "obtain[ed]" or used by Defendants within the meaning of the DPPA, 18 U.S.C. §2724. After the consolidation of all six DPPA actions was ordered, Defendants filed a Consolidated Motion to Dismiss. Finding that Plaintiffs had failed to state a claim for relief under the DPPA and lacked standing to bring these actions, the District Court granted the Consolidated Motion to Dismiss. Plaintiffs appeal the dismissal of their claims for relief.

## 2. COURSE OF PROCEEDINGS AND DISPOSITION BELOW

Plaintiffs[1] instituted the lead DPPA civil action, no.2:07-cv-01, in the United States District Court for the Eastern District of Texas in early January 2007 against Acxiom Corporation, et al.[2] and thereafter brought five additional actions (nos. 2:07-cv-13, 2:07-cv-14, 2:07-cv-17, 2:07-cv-18 and 2:07-cv-410) in the Eastern District of Texas alleging similar violations of Plaintiffs' statutory privacy rights created by the DPPA against different groups of Defendants. (R-01, pgs. 68-88, R-

---

[1] The same 25 individuals are Plaintiffs in all six DPPA actions.
[2] *See* matrix, *infra.,* listing the Defendants sued in each of the six DPPA actions.

13, pgs. 30-51, R-14, pgs. 30-51, R-17, pgs. 49-75, R-18, pgs. 48-73, R-410, pgs. 17-40)[3] Almost every Defendant in the six DPPA actions initially responded to Plaintiffs' complaints by filing motions to dismiss.[4] In addition, certain Defendants[5] in action no. 2:07-cv-01, filed an alternative motion to stay based upon the fact that they were defendants in another DPPA class action, *Fresco, et al. v. Automotive Directions, Inc. et al.,* case no. 03-cv-61066-JEM (the "*Fresco* litigation") pending in the Southern District of Florida. A stay was subsequently granted to these Defendants in light of the fact that a nationwide class was certified for purposes of settlement in the *Fresco* litigation and because the district court in *Fresco* had also temporarily enjoined settlement class members from continuing or taking action in any judicial proceeding against the released parties with respect to claims covered by the proposed settlement. (R-01, pgs. 680-81)

After a later determination that all the judges of the Eastern District of Texas were members of the putative class defined by Plaintiffs, Chief Judge Heartfield

---

[3] Each of the six DPPA actions has its own original and supplemental appellate record. Accordingly, references to the original record on appeal will be denoted by using "R" coupled with the last two (or three) digits of the case number followed by a page number. References to the supplemental record on appeal will be denoted by using "SR" coupled with the last two (or three) digits of the case number followed by a page number. References to Plaintiffs' Record Excerpts will be denoted by using "RE" with a tab letter.

[4] *See* matrix, *infra.,* identifying each Defendant that filed a motion(s) to dismiss in the six DPPA actions.

[5] Choicepoint Public Records Database Tech, Inc., Choicepoint Public Records Inc., Choicepoint, Inc., ChoicePoint Services, Inc., Seisint, Inc., Lexisnexis, Reed Elsevier, Inc. and ChexSystems, Inc.

transferred all six DPPA actions to Judge Walter on February 6, 2008.[6]  (R-01, pg. 689-90)  Judge Walter convened a status conference on March 3, 2008 and thereafter issued orders consolidating all six DPPA actions.  (R-01, pgs.697-98, 702)  Judge Walter also ordered Plaintiffs to file a statement of DPPA violations ('Statement of Violations") with the court as to each individual Plaintiff specifically stating the basis for their claims against each individual Defendant arising out of the alleged obtainment, disclosure or use of that Plaintiff's information from the Texas state motor vehicle records for a purpose not permitted under the DPPA.  (R-01, pg. 697)  Defendants were given a deadline to respond to Plaintiffs' Statement as well as leave to re-urge any pending motions to dismiss in response to the Statement of Violations. (R-01, pgs. 697-98) Judge Walter then permitted Plaintiffs limited discovery in the form of interrogatories specific to each Defendant inquiring as to a particular Defendant's reason for obtaining the information at issue.   (R-01, pg. 698)

Plaintiffs thereafter filed their Statement of Violations in accordance with the timetable set by the District Court.   (R-01, pg. 697)   Most Defendants responded to Plaintiffs' Statement of Violations and almost every Defendant joined in a Consolidated Motion to Dismiss on Common Issues and Response to

_____

[6]  Due to membership in the putative class, Judge Ward recused himself on January 31, 2008 (R-01, pg. 686) and Judge Folsom recused himself on February 1, 2008 (R-01, pg. 687) Judge Walter has been authorized by this Court to preside over cases emanating from the United States district courts in Texas. (R-01, pg. 690)

Plaintiffs' Statement of Violations ("Consolidated Motion to Dismiss") that was filed on April 18, 2008.[7] (R-01, pgs. 697) After submission of Plaintiffs' response to the Consolidated Motion to Dismiss, as well as Defendants' reply and Plaintiffs' surreply, the District Court entered a Judgment on September 9, 2008 granting the Consolidated Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1). (RE, Tab J) In addition, the District Court's Judgment *sua sponte* dismissed Plaintiffs' claims against any remaining Defendants in the six DPPA actions that either had not filed a motion to dismiss or had filed a separate motion to dismiss and not joined in the Consolidated Motion to Dismiss. (RE, Tab J) Given the number of actions involved in this appeal, the many Defendants sued in each action, the numerous Defendants that were voluntarily dismissed from these actions prior to entry of the District Court's Judgment and the myriad of dismissal motions filed, Plaintiffs have attempted to summarize and simplify this information for the Court's convenience in the following matrix:

---

[7] *See* matrix, *infra.,* identifying each Defendant that joined in the filing of the Consolidated Motion to Dismiss.

| Defendant | Dismissed from case prior to 09/09/08 | Filed Consolidated Motion to Dismiss on 04/18/08 | Filed separate Motion to Dismiss prior to 04/18/08 | Filed separate Motion to Dismiss on or after 04/18/08 |
|---|---|---|---|---|
| **2:07-cv-01** | | | | |
| Acxiom Corporation | | ✓ | | |
| Choicepoint Public Records Database Tech Inc.[8] | | | ✓ | |
| Choicepoint Public Records Inc. | | | ✓ | |
| Choicepoint, Inc. | | | ✓ | |
| ChoicePoint Services, Inc. | | | ✓ | |
| Seisint, Inc. | | | ✓ | |
| Lexisnexis, Reed Elsevier, Inc. | | | ✓ | |
| Chex Systems, Inc.[9] | | | ✓ | |
| **2:07-cv-13** | | | | |
| ACS State & Local Solutions, Inc. | | ✓ | | |
| Centerpoint Energy International, Inc. | ✓ | | | |
| FedChex, LLC[10] | ✓ | ✓ | | |
| Global 360 BGS, Inc.[11] | ✓ | ✓ | | |
| Gila Corporation d/b/a Municipal Services Bureau | | ✓ | | |
| American Electric Power Service Corporation | | ✓ | | |
| Houston Lighting & Power Company | ✓ | | | |
| Industrial Foundation of America | ✓ | ✓ | | |
| TXU Business Services Company d/b/a TXU Electric and Gas | ✓ | | ✓ | |
| Southwestern Bell Telephone, LP d/b/a Southwestern Bell Telephone Company | | ✓ | | |
| Reliant Energy, Inc. d/b/a Reliant Resources a/k/a Centerpoint Energy Houston | ✓ | ✓ | | |

---

[8] Every Defendant in 2:07-cv-01 (other than Acxiom Corporation) is also a defendant in the *Fresco* litigation. In light of the stay in effect as to these Defendants pending resolution of the *Fresco* litigation, none of these Defendants joined in the Consolidated Motion to Dismiss.

[9] Chex Systems, Inc. is also a Defendant in 2:07-cv-18.

[10] FedChex was dismissed from 2:07-cv-13 but is also a Defendant in 2:07-cv-18.

[11] Global 360 BGS, Inc. was dismissed from this action by the District Court prior to its September 9, 2008 Judgment by stipulation and agreement of the parties but has nonetheless filed an appearance in this appeal.

| Defendant | Dismissed from case prior to 09/09/08 | Filed Consolidated Motion to Dismiss on 04/18/08 | Filed separate Motion to Dismiss prior to 04/18/08 | Filed separate Motion to Dismiss on or after 04/18/08 |
|---|---|---|---|---|
| Texas Motor Transportation Association | ✓ | ✓ | | |
| American Municipal Services Corporation | | ✓ | | |
| Eugene R. Bucciarelli d/b/a/ International Organization for Migration | No responsive pleading on file. | | | |
| Michael Dinapoli d/b/a State Metropolitan & County Services | No responsive pleading on file. | | | |
| **2:07-cv-14** | | | | |
| Texas Farm Bureau Mutual Insurance Company | | ✓ | | |
| Insurance Technologies Corporation | | ✓ | | |
| Quickquote Financial, Inc. | ✓ | | | |
| JI Specialty Services, Inc. | | ✓ | | |
| Softech International, Inc.[12] | ✓ | ✓ | | |
| Aristotle International, Inc.[13] | ✓ | ✓ | | |
| ADP Screening and Selection Services, Inc. a/k/a Avert, Inc.[14] | ✓ | ✓ | | |
| Globe Life & Accident Insurance Company | | ✓ | | |
| Hawkeye Insurance Services, Inc. | | ✓ | | |
| ISO Claims Services, Inc., d/b/a Insurance Information Exchange | | ✓ | | |
| United Teacher Associates Insurance Company | | ✓ | | |
| Spartan Insurance Company | | ✓ | | |
| **2:07-cv-17** | | | | |
| Safeway, Inc. | | ✓ | | |
| Explore Information Services, LLC d/b/a Schwan's Technology Group | ✓ | | | |

[12] Softech International, Inc. was dismissed from this action by the District Court prior to its September 9, 2008 Judgment by stipulation and agreement of the parties but has nonetheless filed an appearance in this appeal.

[13] Aristotle International, Inc. was dismissed from 2:07-cv-14 but is also a Defendant in 2:07-cv-17.

[14] ADP Screening and Selection Services, Inc. a/k/a Avert, Inc. was dismissed from 2:07-cv-14 but is also a Defendant in 2:07-cv-18.

| Defendant | Dismissed from case prior to 09/09/08 | Filed Consolidated Motion to Dismiss on 04/18/08 | Filed separate Motion to Dismiss prior to 04/18/08 | Filed separate Motion to Dismiss on or after 04/18/08 |
|---|---|---|---|---|
| COE Information Publishers, Inc. | ✓ | | | |
| HEB Grocery Company, LP | | ✓ | | |
| The Hearst Corporation d/b/a Houston Chronicle | | ✓ | | |
| Realtime-ID, LP | ✓ | | | |
| Safety-USA Institute, LLC | | ✓ | | |
| U.S. Interactive, Inc. | | ✓ | | |
| Knowledge-Based Marketing, LLC a/k/a Knowledgebase Marketing, Inc. | ✓ | | | |
| LML Payment System Corp. | ✓ | ✓ | | |
| Network Collection Systems, Inc. | ✓ | | | |
| Source Data, Inc. | ✓ | ✓ | | |
| Student Marketing Group, Inc. | ✓ | | | |
| Texas Financial Asset Recovery Services, LLC | ✓ | | | |
| The Talbot Group, Inc. | | ✓ | | |
| Background Information Systems, Inc. | | ✓ | | |
| Staff Force, Inc. | ✓ | | ✓ | |
| CarFax, Inc. | | ✓ | | |
| Impactinfo, Inc. | | | | |
| Wishlist, LLC | | | | |
| Higher ED Info Source d/b/a E Info Data | No responsive pleading on file. | | | |
| ABC Data d/b/a Unicard Systems, Inc. | | ✓ | | |
| Academy, Ltd. | ✓ | ✓ | | |
| American Student List Co., Inc. | | ✓ | | |
| Aristotle International, Inc. | | ✓ | | |
| Donald R. Berliner, Jr. d/b/a The Berliner Group | No responsive pleading on file. | | | |
| Continueded.com, LLC d/b/a Idrivesafely.com[15] | | ✓ | | |
| Cyberactive Inc. | ✓ | | | |
| Denspri, LLC | No responsive pleading on file. | | | |
| Driver Ed In a Box, LLC | | | | |

---

[15] Continueded.com, LLC d/b/a Idrivesafely.com was also a Defendant in 2:07-cv-18 but has been dismissed from that case.

| Defendant | Dismissed from case prior to 09/09/08 | Filed Consolidated Motion to Dismiss on 04/18/08 | Filed separate Motion to Dismiss prior to 04/18/08 | Filed separate Motion to Dismiss on or after 04/18/08 |
|---|---|---|---|---|
| Driver Training Associates, Inc. d/b/a Ticketschool.com | | ✓ | | |
| Edloe Devco, Corp. d/b/a Defensive Driver Online, Ltd.[16] | ✓ | ✓ | ✓ | |
| Federated Retail Holdings, Inc. f/k/a The May Department Stores Company d/b/a Foley's | | ✓ | | |
| Household Drivers Report, Inc. d/b/a HDR, Inc. | | ✓ | | |
| Lee Farish Computer Services, Inc. | | ✓ | | |
| Paradise Development, Inc. d/b/a Drivesafe Defensive Driving | | ✓ | | |
| Realpage, Inc. | | ✓ | | |
| St. Giles Living Centers, Inc. | ✓ | | | |
| D.B. Stringfellow, Jr. | | ✓ | | |
| Tenant Tracker, Inc. | | ✓ | | |
| The On-Line Traffic School, Inc. | ✓ | | | |
| **2:07-cv-18** | | | | |
| Biometric Access Company | | ✓ | | |
| Certegy Check Services, Inc. d/b/a Equifax Payment Services, Inc. | | | ✓ | ✓ |
| Chex Systems, Inc. | | | ✓ | |
| Driver Training Associates, Inc. | ✓ | ✓ | | |
| Ticketschool.com, Inc. | ✓ | ✓ | | |
| Emaginenet Technologies, Inc. | | ✓ | | |
| Rei Data, Inc. d/b/a Landata Information Services, Inc. | No responsive pleading on file. | | | |
| LML Payment Systems Corp. | | ✓ | | |
| Midwest Data Center, Inc. | ✓ | | | |
| The On-Line Traffic School, Inc. | ✓ | | | |
| Telecheck Services, Inc. | | ✓ | | |
| Tenant Tracker, Inc. | ✓ | ✓ | | |
| Unicard Systems, Inc. | ✓ | | | |
| Zebec Data Systems, Inc. | | ✓ | | |
| Dallas Computer Services, Inc. d/b/a DCS Information Systems | ✓ | | | |

---

[16] Edloe Devco, Corp. d/b/a Defensive Driver Online, Ltd. is also a Defendant in 2:07-cv-18.

| Defendant | Dismissed from case prior to 09/09/08 | Filed Consolidated Motion to Dismiss on 04/18/08 | Filed separate Motion to Dismiss prior to 04/18/08 | Filed separate Motion to Dismiss on or after 04/18/08 |
|---|---|---|---|---|
| Edloe Devco, Corp d/b/a Defensive Driver Online, Ltd. | ✓ | ✓ | ✓ | |
| Agency of Records, Inc. | ✓ | | | |
| Allied Resident/Employee Screening Service, Inc. | | ✓ | | |
| ATM Connect, Inc. | ✓ | | | |
| TML Services, Inc. | ✓ | | | |
| USIS Commercial Services, Inc. f/k/a Total Information Services, Inc. | ✓ | | | |
| Revacomp, Inc. f/k/a Geoscience Computer Application, Inc. d/b/a CIC Applicant Background Checks | ✓ | | | |
| St Giles Living Centers, Inc. | ✓ | | | |
| Driver Ed in a Box, LLC | ✓ | | | |
| US Interactive, Inc. | | | | |
| Continueded.com, LLC d/b/a Idrivesafely.com | ✓ | ✓ | | |
| Acxiom Risk Mitigation, Inc. f/k/a Insight America, Inc. f/k/a E-Infodata.com, Inc. | | ✓ | | |
| ADP Screening and Selection Services, Inc. a/k/a Avert, Inc. | | ✓ | | |
| American Driving Records, Inc. d/b/a First Advantage ADR a/k/a Agency Records, Inc. | | ✓ | | |
| COE Information Publishers, Inc. | | | ✓ | |
| DAC Services, Inc. | ✓ | | | |
| Explore Information Services, LLC d/b/a Schwan's Technology Group | No responsive pleading on file. | | | |
| FedChex, LLC | | ✓ | | |
| Lloyd Foster d/b/a Inter-Pol Data Processing | ✓ | | | |
| Jon Latorella d/b/a Locateplus.com | | ✓ | | |
| Marshall Systems Technology, Inc. | | ✓ | | |
| MVR's, Inc. | ✓ | | | |
| Network Collection Systems, Inc. | ✓ | | | |
| Public Records On-Line, Inc. | ✓ | | | |
| Quickquote Financial, Inc. | ✓ | | | |
| Realtime-ID, LP | No responsive pleading on file. | | | |

| Defendant | Dismissed from case prior to 09/09/08 | Filed Consolidated Motion to Dismiss on 04/18/08 | Filed separate Motion to Dismiss prior to 04/18/08 | Filed separate Motion to Dismiss on or after 04/18/08 |
|---|---|---|---|---|
| Source Data, Inc. | | ✓ | | |
| TML Information Services, Inc. | ✓ | | | |
| URAPI | | ✓ | | |
| **2:07-cv-410** | | | | |
| Freeman Publishers, Inc. | | | | |
| Bayounet.com, Inc. | No responsive pleading on file. | | | |
| Customer Contact, Inc. | No responsive pleading on file. | | | |
| Defensivedriving.com | | | ✓ | |
| | | | | |
| Cross-Sell, Inc. | | ✓ | | |
| Household Drivers Report, Inc. | ✓ | ✓ | | |
| InfoNation, Inc. | | ✓ | | |
| Realty Computer Solutions, Inc. d/b/a Real-Comp | | ✓ | | |
| The Service Bureau | No responsive pleading on file. | | | |
| List Management Systems | No responsive pleading on file. | | | |
| Just Texas | | | | |
| Dominion Enterprises | No responsive pleading on file. | | | |
| Autocount, Inc. | ✓ | | | |
| Data Bank USA | No responsive pleading on file. | | | |
| Joe Winklen Consulting | No responsive pleading on file. | | | |
| URAPI, Inc. | ✓ | ✓ | | |
| National Statistical Service Corporation | | ✓ | | |
| Warranty USA | No responsive pleading on file. | | | |
| Reliant Energy | | ✓ | | |
| TXU Business | | | | ✓ |
| DAC Services | ✓ | | | |
| Dallas Computer Associates | | | | ✓ |

After grant of the Consolidated Motion to Dismiss, Plaintiffs filed a Motion to Amend Judgment.[17]  (R-01, pgs. 1288-92)  Prior to the District Court acting on

---

[17]  Plaintiffs' filed this motion to amend judgment because the District Court's Judgment dismissed the *Fresco* litigation Defendants in the 2:07-cv-01 case that were subject to the District Court's earlier stay order.  Plaintiffs sought to amend the Judgment to exclude the *Fresco*

this motion, Plaintiffs timely filed their original Notice of Appeal. (RE, Tab G) The District Court then entered a second Judgment in response to Plaintiffs' Motion to Amend Judgment. (RE, Tab K) Plaintiffs thereafter filed a Second Motion to Amend Judgment.[18] (R-01, pgs. 1301-05) Prior to the District Court acting on this second motion, Plaintiffs filed an Amended Notice of Appeal as to the second judgment. (RE, Tab H) The District Court then entered a Final Judgment in response to Plaintiffs' Second Motion to Alter or Amend Judgment. (RE, Tab L) Plaintiffs then filed their Second Amended Notice of Appeal as to the Final Judgment. (RE, Tab I)

## STATEMENT OF FACTS

In all six DPPA actions Plaintiffs alleged that they were holders of Texas drivers' licenses or identification cards and that each Plaintiffs' "personal information", as that term is defined in the DPAA, was maintained by the State of Texas in connection with its issuance of drivers' license or identification cards

---

litigation Defendants so as not to run afoul of the injunction entered by the district judge in *Fresco* litigation against taking any legal action against these Defendants.

[18] Plaintiffs' filed this second motion to amend judgment because the District Court's second Judgment deferred judgment as to all Defendants in the 2:07-cv-01 case, including Defendant, Acxiom Corporation, a non-*Fresco* litigation Defendant that was not subject to the District Court's earlier stay order. Plaintiffs sought to amend the second Judgment to allow a final judgment to be entered as to Acxiom Corporation only and also to clear up any procedural questions raised by the earlier deferral of judgment in the 2:07-cv-01 case since it was the lead consolidated action in this appeal.

and/or registration of motor vehicles.[19]  (Statement of Violations, R-01, pg. 735)

Plaintiffs further alleged that each individual Defendant violated § 2721 the DPPA

by either improperly obtaining or using various groups of named Plaintiffs'

"personal information".  (R-01, pg. 735) The allegations of Plaintiffs' complaints

stated that:

> As originally enacted, the DPPA made it unlawful for any person or
> organization to disclose or obtain personal information derived from
> any motor vehicle record, unless the subject of the information had
> authorized such disclosure or the request/disclosure qualified under a
> recognized exception, including use by any federal or state agency,
> use in connection with motor vehicle and driver safety, use in court
> proceedings, use in certain research activities, use relating to certain
> insurance matters, and use for verification of personal information
> submitted by the subject of such information. Use of personal
> information for marketing activities was permitted, so long as the
> States had provided individuals identified in motor vehicle records
> with the opportunity to prohibit such disclosures. This "opt out"
> provision effectively gave individuals the right to prohibit the States

---

[19] The proposed class Plaintiffs sought to represent was defined as follows:

> Each and every individual in the State of Texas whose name, address, driver
> identification number, race and/or date of birth and/or sex are contained in motor
> vehicle records obtained by Defendants from the State of Texas's Department of
> Public Safety, without the express consent of such individuals, from June 1, 2000,
> through the date of judgment herein.  Excluded from the class are persons who
> have expressly authorized the State of Texas's Department of Public of Public
> Safety to provide third parties with their "personal information" for any purpose
> and those persons whose information was obtained for a permissible purpose
> defined by the DPPA; all employees, including, but not limited to, Judges,
> Magistrate Judges, clerks and court staff and personnel of the United States
> District Courts of the Eastern District of Texas, the United States Court of
> Appeals for the Fifth Circuit and the United States Supreme Court; their spouses
> and any minor children living in their households and other persons within a third
> degree of relationship to any such Federal Judge; and finally, the entire jury
> venire called to for jury service in relation to this lawsuit.

(R-410, pg. 354)

from disclosing personal information for marketing purposes. 18 U.S.C. §2721(1993).

(R-01, pgs. 104-105)  Plaintiffs' complaints also alleged that:

Congress significantly amended the DPPA in 1999 by eliminating the "opt out" provision for marketing activities. Use or obtaining of personal information contained in motor vehicle records for "surveys, marketing or solicitations" is permitted only "if the State has obtained the express consent of the person to whom such personal information pertains." Similarly, a requester of personal information may obtain such information for any purpose, "if the requester demonstrates if has obtained the express consent of the person to whom such personal information pertains." 18 U.S.C. §2721(b)(13), (14) (1999). By changing the "opt out" exceptions of the 1993 DPPA to "opt in" exceptions in the 1999 DPPA, Congress significantly reduced the categories of persons whose personal information may be lawfully obtained under the Act. *See Reno v. Condon*, 120 S.Ct. 666, 669 (2000) (upholding the constitutionality of the DPPA) (States may no longer "imply consent from a driver's failure to take advantage of a state-afforded opportunity to block disclosure, but must rather obtain a driver's affirmative consent to disclose the driver's personal information" for restricted purposes.).  The effective date of the 1999 amendments to the DPPA was June 1, 2000.

(R-01, pg. 105) [20] Plaintiffs further alleged that:

---

[20] *See In re Imagitas, Inc.,* 2008 U.S. Dist. LEXIS 29183 at \*26 -\*27 (M.D. Fla., April 9, 2008) ("As originally adopted, the DPPA permitted states to assume drivers consented to the release of their personal information for use in surveys, marketing, solicitations and in response to individual motor vehicle record requests, unless drivers "opted-out" by affirmatively withholding their consent. See *Condon,* 528 U.S. at 144. The 1999 amendment to the DPPA changed the "opt-out" provision to an "opt-in" provision, meaning that the states could no longer imply consent; rather, drivers' personal information could only be released for these reasons upon express consent. *Id.* at 144-45; Pub. L. No. 106-69, 113 Stat. 986, § 350(c)-(d) (1999). As amended, "[t]he language of Sections 2721(b)(11)-(13) unambiguously requires the consent of individuals before their motor vehicle record information may be released." *Collier v. Dickinson,* 477 F.3d 1306, 1310-11 (11th Cir. 2007), cert. denied, 128 S. Ct. 869, 169 L. Ed. 2d 724 (2008). In response to the amendment, "[f]orty-nine states immediately passed legislation to ensure compliance with [the opt-in provisions of] the DPPA." *Kehoe,* 421 F.3d at 1210. "

Texas law does not provide for an "opt-in" procedure as described in the 1999 amendments to the DPPA. In fact, Texas does not obtain express consent from any driver. Instead, the State of Texas only sells "personal information" from a motor vehicle record to "persons" who certify that they have a lawful purpose for the information (other than for direct or mass marketing) and/or have obtained the specific written consent of the Texas driver or identification card holder for the release of their information. Once a "person," as that term is defined by the DPPA, certifies to the State of Texas that they have a lawful purpose for *some* personal information and/or have obtained any requisite consent (and agrees to indemnify the State of Texas for any damages that State might incur by this procedure), the State of Texas, through its Department of Public Safety, provides that person with a copy of the State's *entire database* of names, addresses and other personal information – some twenty (20) million plus residents of the State of Texas.

(R-01, pgs. 105-106) Plaintiffs claimed that each Defendant purchased this entire database of names from the Texas Department of Public Safety and that all Defendants signed a contract with the State of Texas whereby they certify to the State of Texas that they have a proper purpose for obtaining each piece of personal information and/or have obtained requisite written consents. (R-01, pg. 106)

Plaintiffs additionally alleged that although some Defendants may have a permissible use under the DPPA for obtaining "personal information" for some of the people in the database, Defendants did not have a permissible purpose to obtain all twenty million names in Texas' database. (R-01, pg. 106)

Plaintiffs claimed that after the effective date of the 1999 amendment to the DPPA (June 1, 2000), Defendants unlawfully obtained "personal information" of individuals from the Texas "motor vehicle records" in violation of the DPPA, in

that Defendants' obtaining and use of this "personal information" was not for a purpose authorized by the DPPA. (R-01, pg. 107) As a result, Plaintiffs sought actual, liquidated and punitive damages, equitable relief and attorney fees and costs pursuant to section 2724 (b) (R-01, pgs. 109-110)

Defendants, although comprised of varying types of business organizations, were broken down by the parties (and later the District Court) into two distinct categories: (1) those who obtain information directly from the State of Texas for their own use ("Non-Sellers")[21], and (2) those who obtain information from the State of Texas solely for the purpose of resale to others ("Resellers").[22] (RE, Tab J) Plaintiffs alleged that Non-Sellers[23] were liable because, although they may have a permissible use under the DPPA for obtaining some limited "personal information" from the Texas Department of Public Safety database, the bulk obtainment of personal information contained in motor vehicle records for purposes of Defendants' convenience or cost saving or for Defendants' continued use, in a database or otherwise, as a business resource or in the conduct of ordinary business activities *is not a permissible purpose for obtaining data protected by the DPPA.* (*See* Statement of Violations, R-01, pg. 736-37)

---

[21] Defendants referred to as **"Non-Sellers"** are listed on pages 2 and 3 of the District Court's Judgment granting the Consolidated Motion to Dismiss. (RE, Tab J)

[22] Defendants referred to as **"Resellers"** are listed on pages 3 and 4 of the District Court's Judgment granting the Consolidated Motion to Dismiss. (RE, Tab J)

[23] Plaintiffs referred to this group of Defendants as "Convenience Purchasers" in its lower court filings but will refer to them as "Non-Sellers" in this brief for purposes of consistency as this is how the District Court characterized this defendant group.

For those Plaintiffs that denied any relationship, business or otherwise, with a particular Non-Seller[24], Plaintiffs stated their improper obtainment claims against each individual Non-Seller by way of the following exemplar:

> Based on the lack of any relationship, business or otherwise, between the above-referenced Plaintiffs and this Defendant, the above-referenced Plaintiffs assert that this Defendant had no permissible purpose for obtaining their personal information. Thus, this Defendant has violated the DPPA by at least the following ways: obtaining the above-referenced Plaintiffs' "personal information" for an impermissible purpose – to save itself time and/or money by not having to go back to the State of Texas each time it needs additional information, to avoid the inconvenience of having to go to the State each time it needs an additional customers' information (as many other entities do on a regular basis), and any other purposes adduced through further discovery in this case. Any purpose this Defendant had for obtaining the above-referenced Plaintiffs' "personal information" other than an immediately contemplated use of the information for one of the DPPA's authorized uses for the information constitutes a violation of the DPPA. Rather than verify information on a case-by-case basis as contemplated by the DPPA, this Defendant chose to simply obtain the entire database, containing the personal information of over twenty million individuals. This choice to violate the law is the basis for Plaintiffs' improper obtainment claims. Furthermore, this Defendant has continued to use Plaintiffs' personal information by maintaining a database containing the above-referenced Plaintiffs' personal information as part and parcel to the conduct of its ordinary business activities and as a business resource. This continuing use of these plaintiffs' personal information by this Defendant is not an enumerated use in the DPPA and is contrary to its provisions. Thus, this continuing use of the above-referenced Plaintiffs' "personal information" is in direct violation of the DPPA.

(Statement of Violations, R-01, pgs. 736-737)

---

[24] For those Plaintiffs that were aware of a relationship with a particular Non-Seller, these Plaintiffs reserved the right to conduct discovery as to whether or not that Defendant had a permissible purpose for obtaining their specific data at the time it was obtained. (R-01, pg. 736)

Plaintiffs alleged that Resellers were liable because the DPPA does not permit disclosure to a nonuser, who only seeks the information in order to redisclose it to another for use under a permitted purpose, i.e., that resale of protected information is not a permissible purpose for obtainment under the DPPA.

For those Plaintiffs that denied any relationship, business or otherwise, with a particular Reseller[25], Plaintiffs stated their improper obtainment claims against each individual Reseller by way of following exemplar:

> Based on the lack of any relationship, business or otherwise, between the above-referenced Plaintiffs and this Defendant, the above-referenced Plaintiffs assert that this Defendant had no permissible purpose for obtaining their personal information. Thus, this Defendant has violated the DPPA by at least the following ways: obtaining the above-referenced Plaintiffs' "personal information" for an impermissible purpose – to resell the data to other parties and any other purposes adduced through further discovery in this case. Any purpose this Defendant had for obtaining the above-referenced Plaintiffs' "personal information" other than its own immediately contemplated use of the information for one of the DPPA's authorized uses for the information constitutes a violation of the DPPA. Resale of data is not a proper purpose for obtaining plaintiffs personal information and obtainment of this data merely to resell violates the express terms of the DPPA, as more fully explained in Plaintiffs' various responses to Motions to Dismiss this lawsuit. *See Locate.Plus.Com. Inc. v. Iowa D.O.T,* 650 N.W.2d 609,616 (Iowa 2002). Furthermore, this Defendant has continued to use Plaintiffs' personal information by maintaining a database containing the above-referenced Plaintiffs' personal information as part and parcel to the conduct of its ordinary business activities and as a business resource. This continuing use of these plaintiffs' personal information by this

---

[25] For those Plaintiffs that were aware of a relationship with a particular Reseller, these Plaintiffs also reserved the right to conduct discovery as to whether or not that Defendant had a permissible purpose for obtaining their specific data at the time it was obtained. (R-01, pg. 745)

Defendant is not an enumerated use in the DPPA and is contrary to its provisions. Thus, this continuing use of the above-referenced Plaintiffs' "personal information" is in direct violation of the DPPA.

Statement of Violations (R-01, pg. 745) The District Court found that Plaintiffs' allegations against both Non-Sellers and Resellers, as exemplified above, failed to state a claim for relief under the DPPA and failed to give them standing to bring these claims.

## SUMMARY OF THE ARGUMENT

The District Court erroneously granted Defendants' Consolidated Motion to Dismiss pursuant to Rule 12(b)(6) because Plaintiffs adequately stated a legally cognizable claim for relief under section 2724(a) of the DPPA. As to Non-Sellers, Plaintiffs plead that each of these Defendants was liable for violating the DPPA because they (1) knowingly obtained Plaintiffs' personal information, (2) from a motor vehicle record, (3) for a purpose not permitted under the Act, i.e., the bulk obtainment of personal information contained in motor vehicle records for purposes of Defendants' convenience or cost saving or for Defendants' continued use, in a database or otherwise, as a business resource or in the conduct of ordinary business activities. Non-Sellers' practice of purchasing the entire Texas motor vehicle record database for its own convenience or continued use is simply not a permissible purpose enumerated in the DPPA for obtaining protected personal information.

Likewise, as to Resellers, Plaintiffs plead that each of these Defendants was liable for violating the DPPA because they (1) knowingly obtained Plaintiffs' personal information, (2) from a motor vehicle record, (3) for a purpose not permitted under the Act, i.e., the obtainment of personal information contained in motor vehicle records for purposes of resale or redisclosure. Resellers are not "authorized recipients" of personal information and their practice of purchasing the entire Texas motor vehicle record database for purposes of resale or disclosure to others is not a permissible purpose enumerated in the DPPA for obtaining protected personal information.

In addition, the District Court erroneously granted Defendants' Consolidated Motion to Dismiss pursuant to Rule 12(b)(1) because Plaintiffs possessed the requisite standing necessary to bring these claims. Plaintiffs' adequately stated claims for relief under the DPPA alleged an "injury-in-fact – the invasion of their privacy interest in the personal information contained in their individual motor vehicle records caused by impermissible obtainment of those records by Defendants. As a result, Plaintiffs actually sustained a concrete and particularized invasion of a legally protected interest that was causally connected to Defendants' conduct and fully redressable by the remedies set out in section 2724(b) of the DPPA.

# ARGUMENT AND AUTHORITIES

Plaintiffs submit the following argument and authorities in opposition to the Final Judgment entered by the District Court in these actions.

**1.  STANDARD OF REVIEW FOR MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

The grant of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is reviewed de novo. *Kennedy v. Chase Manhattan Bank USA, NA,* 369 F.3d 833, 839 (5th Cir. 2004) (citations omitted). On a motion to dismiss, the allegations of the complaint must be construed in the in the light most favorable to the plaintiff with all reasonable inferences drawn in the plaintiff's favor. *See Lovick v. Ritemoney, Ltd.,* 378 F.3d 433, 437 (5th Cir. 2004) (citation omitted). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965 (quotation marks, citations, and footnote omitted) A motion to dismiss for failure to state a claim must be granted if the Complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Id.*

**2.  STANDARD OF REVIEW FOR MOTION TO DISMISS PURSUANT TO RULE 12(b)(1)**

The grant of a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure is reviewed de novo. *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001). In evaluating a Rule 12(b)(1) motion, the district court may consider: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of undisputed facts." *Id*. Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief. *Id.*

## THE DISTRICT COURT ERRED IN GRANTING DEFENDANTS' CONSOLIDATED MOTION TO DISMISS AND IN *SUA SPONTE* DISMISSING PLAINTIFFS' CLAIMS AGAINST ALL REMAINING DEFENDANTS

1. **PLAINTIFF'S DRIVERS PRIVACY PROTECTION ACT CLAIMS AGAINST DEFENDANT SHOULD NOT HAVE BEEN DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF COULD BE GRANTED.**

The Drivers Privacy Protection Act was enacted in response to several well-publicized incidents in which criminals had used publicly available motor vehicle records to identify, stalk and sometime kill their victims. (R-01, pgs. 103-104) The most notable of those incidents was the murder in the late 1980's of Rebecca Schaeffer, star of the television show *My Sister Sam,* by an obsessed "fan" who had hired a private investigator to follow her. The investigator copied down her

license plate number and obtained her home address from the State's Department of Motor Vehicles ("DMV"). When the "fan" received her home address, he went to Schaeffer's home and murdered her. *See* 139 Cong. Rec. S15, 765 (1993). Around the same time, another woman was murdered in Tempe, Arizona, five women in California were sent threatening letters from a 31-year-old man, and several owners of expensive cars in Iowa were robbed by a gang of teenagers. Like Ms. Schaeffer's killer, all of these other criminals obtained their victim's addresses from the State's DMV. *See* Cong. Rec. S15, 745-01 (1993). Following these incidents, public concern grew over the availability of personal information maintained by State DMVs. (RE, Tab J)

Additionally, Congress was concerned with the practice by many states of selling personal information maintained by DMVs to businesses and marketers. Citizens were being flooded with junk mail and unwanted solicitations. *Reno v. Condon*, 520 U.S. 141, 143-144, 120 S.Ct. 666, 668 (2000); 183 ALR Fed. 37 § 2.

To address these concerns, Congress enacted the Driver's Privacy Protection Act of 1994, 18 U.S.C. §§2721-2725.[26] (RE, Tab M) The DPPA is structured such that section 2721(a) provides the general prohibition on the release and use of

---

[26] *See also Margan v. Niles*, 250 F. Supp. 2d 63, 68-69 (N.D.NY, 2003) for a discussion of the intended purpose of the DPPA which is based on numerous citations to the congressional record; 139 Cong. Rec. S15,754-01, S15,764-66 (1993)

motor vehicle information, whereas section 2721(b) enumerates the specific exceptions to the general prohibition.

The DPPA makes it unlawful for a State DMV, and "any officer, employee, or contractor thereof" to "knowingly disclose of otherwise make available to any person or entity personal information[27]…about any individual obtained by the department in connection with a motor vehicle record." 18 U.S.C. § 2721(a)(1). The DPPA also prohibits a private actor from "knowingly obtain[ing], disclos[ing], or us[ing] personal information, from a motor vehicle record, for a purpose not permitted under [section 2721 (b) of this chapter]." 18 U.S.C. § 2724(a).

While the DPPA generally prohibits a State from disclosing personal information, the statute enumerates fourteen (14) "permissible uses" for which personal information may be disclosed.[28]

The DPPA also provides for resale or redisclosure of personal information obtained by "authorized recipients":

> Resale or redisclosure.  An authorized recipient of personal information (except a recipient under subsection (b)(11) or (12)) may resell or redisclose the information only for a use permitted under subsection (b) (but not for

---

[27] "Personal information" is defined as "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status." 18 U.S.C. § 2725(3).

[28] Please see pages 5 and 6 of the District Court's Judgment granting Defendants' Consolidated Motion to Dismiss for a complete listing of the "permissible uses" for which personal information may be disclosed under section 2721 (b) of the DPPA. (RE, Tab J)

uses under subsection (b)(11) or (12)). An authorized recipient under subsection (b)(11) may resell or redisclose personal information for any purpose. An authorized recipient under subsection (b)(12) may resell or redisclose personal information pursuant to subsection (b)(12). Any authorized recipient (except a recipient under subsection (b)(11)) that resells or rediscloses personal information covered by this chapter must keep for a period of 5 years records identifying each person or entity that receives information and the permitted purpose for which the information will be used and must make such records available to the motor vehicle department upon request.

18 U.S.C. § 2721(c).

Section 2722(a) of the DPPA makes it unlawful for any person to knowingly obtain or disclose personal information from a motor vehicle record, for any use not permitted under section 2721(b). Section 2722(a) does not by itself create civil or criminal liability. It merely describes what conduct is wrongful under the DPPA. Section 2724(a), in turn, provides the standard for civil liability. Persons who violate the DPPA may be subject to a criminal fine as well as civil liability for (1) actual damages, but not less than liquidated damages in the amount of $2,500, (2) punitive damages upon a showing of a willful or reckless disregard of the law, (3) reasonable attorneys' fees and other litigation costs, and (4) preliminary and equitable relief. 18 U.S.C. §§ 2723(a) and 2724(b).

In a straightforward fashion, section 2724(a) sets forth three elements giving rise to liability, i.e., that a defendant (1) knowingly obtained, disclosed or used

personal information, (2) from a motor vehicle record, (3) for a purpose not permitted. *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, and Stevens, P.A.*, 525 F.3d 1107, 1111 (11th Cir. 2008). The plain meaning of the third factor is that it is only satisfied if shown that the obtainment, disclosure, or use was not for a purpose enumerated under § 2721(b). *Id.* With regard to the third element, the plaintiff bears the burden to prove that the personal information was not obtained, disclosed, or used for a purpose specifically enumerated in Section 2721(b). *Id.*

A. **The Non-Seller Defendants violated the DPPA by knowingly obtaining Plaintiffs' personal information from a motor vehicle record for a purpose not permitted under the Act, i.e., the bulk obtainment of personal information contained in motor vehicle records for purposes of Defendants' convenience or cost saving or for Defendants' continued use, in a database or otherwise, as a business resource or in the conduct of ordinary business activities.**

As recognized by the District Court, Plaintiffs' stated violations of the DPPA by Non-Sellers consisted of the fact that personal information from Plaintiffs' motor vehicle records were obtained by Non-Sellers for an impermissible purpose —"to save [themselves] time and/or money by not having to go back to the State of Texas each time [they] need additional information" and "to avoid the inconvenience of having to go to the State each time [they] needed an additional customers' information." (RE, Tab J) Plaintiffs' improper obtainment claims were keyed upon Non-Sellers' choice to obtain the entire database

(containing the personal information of over twenty million individuals) so as to allow for continued use of that information in the conduct of their ordinary business activities and for the purpose of maintaining an information database as a business resource. (Statement of Violations, R-01, pg. 245) The District Court correctly understood Plaintiffs' contention to be that those activities were not enumerated permissible uses and were contrary to the DPPA's provisions." (RE, Tab J)

The District Court also properly acknowledged that *part* of Plaintiffs' claim statement included an allegation that any purpose Non-Sellers had for obtaining their "'personal information' other than an immediately contemplated use of the information for one of the DPPA's authorized uses" constituted a violation of the DPPA. (RE, Tab J) However, the District Court erred by then holding that "Plaintiffs do not allege that Defendants' have obtained or used their personal information for an impermissible purpose; rather, they argue only that obtainment of the entire database was impermissible as Defendants' did not immediately use the data." (RE, Tab J) This cramped and unduly narrow reading of Plaintiffs' claim for relief statement against Non-Sellers was improper and, in turn, led to an analysis that resulted in an erroneous dismissal of their claims.

Once Plaintiffs' DPPA violation claims against Non-Sellers were mischaracterized in this fashion, the District Court had little trouble in ruling that

no claim for relief was stated by Plaintiffs because they had failed to plead any facts alleging that Non-Sellers obtained or used their information *for a purpose not permitted* under the Act. The District Court simply concluded that an allegation that Non-Sellers did not immediately use the data obtained (which is a truncated statement of their claim) could not constitute an allegation of obtainment or use of "personal information" for an impermissible *purpose*. (RE, Tab J) Since there was no "immediate use" requirement for obtainment of data protected by the DPPA, the District Court termed this an illogical restriction on the use of data obtained for a permissible purpose. (RE, Tab J)

In order to understand why the District Court's analysis of Plaintiffs' claims against Non-Sellers was faulty, it must be understood that Non-Sellers' failure to immediately use obtained DPPA data was not the gravamen of Plaintiffs' claim for relief against Non-Sellers. Instead, the thrust of Plaintiffs' DPPA claims against Non-Sellers is that the bulk obtainment or purchase of personal information contained in motor vehicle records for purposes of either convenience or cost saving or for continued use, in a database or otherwise, as a business resource or in the conduct of ordinary business activities *is not a permissible purpose for obtaining data protected by the DPPA.* This is because a permissible purpose is required by the DPPA *for each individual motor vehicle record obtained.*

By purchasing the entire Texas database, Non-Sellers chose to avoid the inconvenience of having to go to the State each time they needed an additional customers' information as many other entities do on a regular basis. By purchasing the entire Texas database, Non-Sellers also acquired continued and uninterrupted use and access to Plaintiffs' personal information (whether there was any need for that individual's information or not at the time it was obtained) as part and parcel of the conduct of their ordinary business activities and as a business resource. These are simply impermissible purposes for obtaining data subject to the DPPA and properly subject Non-Sellers to liability under the DPPA.

> **(i)** **The Plain Language of the DPPA Prohibits Companies From Obtaining "Motor Vehicle Records" Without a Specific Permissible Purpose for Each Record Obtained.**

The argument advanced in the court below by Non-Sellers and essentially adopted by the District Court its dismissal ruling boils down to a single premise: if Non-Sellers had a proper purpose for obtaining *some* individual pieces of "personal information" from a State DVM then the DPPA allows them to obtain *all* individual pieces of "personal information" from the millions of "motor vehicle records" contained in a State's database. Under this view of the DPPA, if a Non-Seller had a permissible purpose to obtain a single individual's personal information contained in a single motor vehicle record that Non-Seller would be authorized to purchase a State DVM's entire database containing millions of other

person's personal information in order to retrieve that one individual's motor vehicle record. The DPPA, however, regulates individual pieces of "personal information" and does not allow entities to purchase information in bulk for which they do not have a corresponding use.

The DPPA regulates individuals' "personal information" and individuals' "motor vehicle records." The opening sections of the DPPA provide that "State departments of motor vehicles . . . shall not knowingly disclose . . .

> (1) *personal information . . . about any individual* obtained by the department in connection with *a motor vehicle record.*

> (2) *highly restricted personal information . . . about any individual* obtained by the department in connection with *a motor vehicle record.*[29]

The DPPA proceeds to define "motor vehicle records" as follows:

> (1) *"motor vehicle record"* means any record that pertains to *a motor vehicle operator's permit* [30]

"Personal information" is also defined by the DPPA as follows.

> (3) *"personal information"* means information that identifies *an individual*, including an *individual's photograph*, social security number, . . . . [31]

Every emphasized term is in the singular. Congress never refers to "motor vehicles records;" it is invariably *a motor vehicle record.* Congress does not use the

---

[29] 18 USCA § 2721(a)(emphasis added).
[30] 18 USCA § 2725 (emphasis added)
[31] *See id.* (emphasis added).

terms individuals or drivers in the plural. The DPPA invariably refers to *an individual* or *a driver.* The section of the DPPA imposing civil liability for improper obtainment of a motor vehicle record is also in the singular.

> Cause of action. -- A person who knowingly obtains, discloses or uses personal information, from *a motor vehicle record*, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.[32]

This language plausibly demonstrates that Congress, instead of permitting bulk access to motor vehicle records, sought to regulate individual motor vehicle records and the private personal information contained within them.

Although there is no provision in the DPPA that affirmatively forbids bulk obtainment of personal information, the DPPA provision that deals with the use of information for bulk distribution requires the express consent of the relevant individual. Section 2721(b)(12) provides that "'Personal information' . . . *may be disclosed* . . . [f]or bulk distribution for surveys, marketing or solicitations *if the State has obtained the express consent of the person to whom such personal information pertains."* (emphasis added). Section 2721(b)(12) is the only provision of the DPPA that *allows* a State to distribute its entire database. No other provision of the DPPA refers to bulk distribution of information contained on a motor vehicle record. The fact that the DPPA limits the bulk use of protected data to circumstances where the

---

[32] 18 USCA § 2724(emphasis added).

State has obtained the express consent of each individual whose information is obtained gives an indication of the disfavor in which Congress viewed bulk obtainment, use or disclosure of individual motor vehicle records.

The DPPA is clearly intended to regulate information at the individual level and only allows bulk distribution in a very limited context not relevant to this case. It is also clear that Congress was concerned with the fact that State DMVs were profiting from the sale of individual's private information. With the exception of section 2721(b)(12) there is absolutely no support for the proposition that the DPPA expressly allows the bulk sale of an individual's personal information contained in their individual motor vehicle record.

Non-Sellers are only allowed to purchase individual motor vehicle records for which they have a proper purpose. These permissible purposes are the uses specifically enumerated in subsections (1) through (14) of section 2721(b). The DPPA clearly provides for and requires a corresponding permissible use for each particular piece of information obtained. It is clear that Plaintiffs properly alleged a claim for relief against Non-Sellers for lacking a permissible purpose to obtain their specific individual "motor vehicle records" containing their individual "personal information." This conclusion is based upon a proper interpretation of the DPPA and its clear meaning. For this reason, the District Court erred in dismissing Plaintiffs' claims for relief against the Non-Seller Defendants.

**B.  The Reseller Defendants violated the DPPA by knowingly obtaining Plaintiffs' personal information from a motor vehicle record for a purpose not permitted under the Act, i.e., the obtainment of personal information contained in motor vehicle records for purposes of resale or redisclosure.**

As set forth previously, Plaintiffs alleged that Resellers were in violation of the DPPA because they impermissibly obtained Plaintiffs' personal information for the purpose of reselling the data to other parties when they were not themselves "users" of the information. (Statement of Violations, R-01, pg. 745)  The District Court dismissed those allegations for failure to state a claim for relief primarily on the following analysis drawn from the *Russell* decisions.[33]

Initially, the District Court determined that the DPPA "clearly and unambiguously permits '[a]n authorized recipient of personal information…[to] resell or redisclose the information.' 18 U.S.C. § 2721(c). (RE, Tab J)  The District Court ruled that the only limitation placed on the term "authorized recipients" is that the information may be resold or redisclosed "only for a use permitted under subsection (b)." (RE, Tab J)  As such, the District Court concluded that "[t]he DPPA does not require an 'authorized recipient' to also be an 'authorized user'. (RE, Tab J)  Citing *Russell I*, 300 F. Supp. 2d at 455-56 and *Russell II*, 302 F. Supp. 2d at 654, the District Court found that "[b]y using the term "authorized recipients" instead of "authorized users" or "permissible users," Congress

---

[33] *See Russell v. Choicepoint Serv., Inc.*, 300 F. Supp. 2d 450 (E.D.La, 2004) ("*Russell I*"); *Russell v. Choicepoint Serv., Inc.*, 302 F. Supp. 2d 654 (E.D.La, 2004) ("*Russell II*").

anticipated that entities like defendant Resellers would obtain drivers' personal information from DMV's solely for the purpose of redistributing the information to persons with permissible uses." (RE, Tab J)

Because the DPPA allows "authorized recipients" to obtain "personal information" solely for purposes of resale to third parties with permissible users, The district Court held that Plaintiffs' may not maintain their DPPA claim against Resellers for improper obtainment under 28 U.S.C. 2724(a) without also alleging an accompanying impermissible use. Having interpreted the DPPA in that (erroneous) fashion, the District Court then dismissed Plaintiffs' improper obtainment claims against the Resellers because Plaintiffs "failed to allege any facts indicating an impermissible use of the 'personal information' obtained by Resellers." (RE, Tab J)

(i)     <strong><em>Russell</em> Incorrectly Interpreted The DPPA As It Applies To Resellers</strong>

The *Russell* decisions relied upon by the District court unequivocally hold that the DPPA permits an entity to obtain drivers license data solely for the purpose of reselling that data to others for a permissible use. In reaching this conclusion the courts in *Russell* focused on the term "authorized user" as found in section 2721(c), the specific provision of the DPPA regarding resale of data. The defendants in the *Russell* cases argued that the State of Louisiana had "authorized"

them to resell data and thus they had obtained the data for a permissible purpose – to resell it.

In contrast, the plaintiffs in the *Russell* cases argued that the term "authorized recipient" meant one who was authorized by the DPPA to receive the data, i.e. someone who had a permissible purpose under section 2721(b) for obtaining the data. *Russell* noted that the term "authorized recipient" is not defined by the DPPA and concluded that the Act must be referring to some undefined state authorization process:

> The term "authorized" is defined as "marked by authority ... [or] sanctioned by authority" *Webster's Third New International Dictionary*. "Authorize" means "to endorse, empower, justify, or permit by or as if by some recognized or proper authority" or "[t]o give permission for ... [or to] sanction." *Webster's Third New International Dictionary; The American Heritage Dictionary.* The *American Heritage Dictionary* supplements the above definition of "authorize" with the following example of its usage: "city agency that authorizes construction projects." (emphasis omitted). The definitions of "authorize" and "authorized" make clear that the terms are commonly used in reference to a grant of permission by a state or municipal agency. This common usage would apply to a DMV resale authorization just as it would a city council construction authorization. It is doubtful that Congress employed the term "authorized" to refer to the DPPA directly sanctioning a recipient because the Act otherwise speaks in terms of "use" rather than "user" and provides no process or guidelines for authorization. More likely, Congress intended to leave the recipient authorization process to the states.

*Russell I*, 300 F. Supp. 2d at 457.

A close examination of the Russell court's analysis, however, reveals a glaring problem. First, the court in *Russell* noted that authorized means "marked by authority . . . [or] sanctioned by authority. Plaintiffs do not dispute this. The Court next notes an example of usage of the term authorized as being "city agency that authorizes construction projects." *Id.* Plaintiffs agree that this is *one* common use for authorized, but hardly the only one or even the best one. From here, the court in *Russell* makes a quantum leap by concluding that Congress could have only been referring to some undefined, unspecified state created recipient authorization process. *Id. Russell* reached this puzzling conclusion despite the presence of other language in section 2721(c) clearly demonstrating that the term "authorized recipient" refers to persons who were authorized by the DPPA itself to obtain personal information contained in motor vehicle records. Statutes commonly "authorize" actions and the DPPA is no different. A few phrases taken from section 2721(c) illustrate the point:

> An **authorized recipient . . . (except a recipient under subsection (b)(11) or (12))** may resell or resdisclose . . .

> An **authorized recipient under subsection (b)(11)** may resell or redisclose . . .

> **An authorized recipient under subsection (b)(12)** may resell or redisclose . . .

> Any **authorized recipient (except a recipient under subsection (b)(11))** that resells or rediscloses . . .

In four separate instances within a single paragraph, the DPPA makes reference to a person being an authorized recipient **under** a specific provision of the DPPA. One could not ask for a clearer statement of the meaning of authorized recipient.

Section 2721(c) simply states that persons who are allowed to receive motor vehicle records under the DPPA are also allowed to sell those records, so long as they make sure that the vendees of the data are themselves obtaining the data for a permissible use. The *Russell* court's holding that the wording of section 2721(c) itself creates a right to purchase motor vehicle records solely for the purpose of resale, independent of the permissible uses outlined in section 2721(b), is an improper construction of this statute and is contrary to the plain and ordinary meaning of section 2721(c).[34] *See Kehoe v. Fid. Fed. Bank & Trust,* 421 F.3d 1209, 1212 (11th Cir. 2005) (interpreting the DPPA: "In construing a statute, we must begin, and often should end as well, with the language of the statute itself because we presume that Congress said what it meant and meant what it said.") (quotation omitted), cert. denied, 547 U.S. 1051, 126 S.Ct. 1612, 164 L. Ed. 2d 353 (2006). If the plain language of a statute evidences its meaning, it is not necessary to consider its legislative history, including the significance of remarks of

---

[34] A district court's construction of federal statutes is subject to de novo review. *Chao v. Cmty. Trust Co.,* 474 F.3d 75, 79 (3d Cir. 2007).

sponsoring legislators and the construction and interpretation given similar legislation. *In re Imagitas, Inc.,* 2008 U.S. Dist. LEXIS 29183 at *17 (M.D. Fla., April 9, 2008) citing *United States v. Gonzales,* 520 U.S. 1, 6, 117 S. Ct. 1032, 137 L. Ed. 2d 132 (1997) ("Given the straightforward statutory command, there is no reason to resort to legislative history.").

In contrast with the *Russell* courts' strained misinterpretation of section 2721(c), the Iowa Supreme Court in *Locate.Plus.Com, Inc. v. Iowa Dept. of Transp.*, 650 N.W.2d 609 (Iowa, 2002) undertook a detailed analysis of section 2721(c) and concluded that the DPPA did not allow entities to obtain motor vehicle records for solely for the purpose of resale.  The court in *Locate.Plus.Com, Inc.* noted that the DPPA imposed a gate keeping function on state departments of motor vehicles.

> The language of the DPPA as a whole makes it plain that Congress. . . sought limited access to personal information in state motor vehicle records by both protecting citizens from the improper use of such information, while allowing access for legitimate purposes or uses. At the same time, it imposed a gate keeping function on the state departments of motor vehicles to exercise discretion to disclose personal information when used for the purposes described in subsection (b). *We think this approach taken by Congress to the dissemination of personal information in motor vehicle records contemplates that the person or entity requesting disclosure of the personal information also be the person or entity that will use the information for the statutory purpose.* Thus, non-consensual disclosure of information is permitted only for approved uses, and

> disclosure is not permitted if the requester is not seeking
> to use the information for the statutory purpose.

Id. at 616 (emphasis added)

The Iowa Supreme Court then held that a private reseller "must itself be an 'authorized user'" to be permitted access to DMV records. *Id.* The Iowa Supreme Court's conclusion is bolstered by well-established rules of statutory construction – that the DPPA must be interpreted "as a symmetrical and coherent regulatory scheme,"[35] and "fit, if possible, all parts into an harmonious whole,"[36] and that the statute's words "must be read in their context and with a view to their place in the overall statutory scheme."[37] In other words, a court "should not confine itself to examining a particular statutory provision in isolation. The meaning--or ambiguity--of certain words or phrases may only become evident when placed in context." [38]

*Locate.Plus.com* represented the unanimous opinion of all seven justices of the highest court of the State of Iowa. When asked to decide the specific question of whether the DPPA allows a person to obtain drivers' license data from a state for the sole purpose of resale the Iowa Supreme Court concluded that it did not.

**(ii)    Even if *Russell* is Correct, The State of Texas Has No Resale Authorization Process**

---

[35] *Gustafson v. Alloyd Co.,* 513 U.S. 561, 569 (1995).

[36] *FTC v. lvandel Brothers, Inc*., 359 U.S. 385, 389 (1959)

[37] *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 809 (1989).

[38]*Food and Drug Admin. v. Brown & Williamson Tobacco Corp*., 529 U.S. 120, 133 (2000); *Brown v. Gardner*, 513 U.S. 115, 118 (1994) ("Ambiguity is a creature not of definitional possibilities but of statutory context").

Assuming, *arguendo*, that the *Russell* decisions are correct and a proper understanding of the term "authorized recipient" means that Congress chose to leave it up to the States to develop some authorization process by which to allow companies to obtain motor vehicle records solely for resale. What exactly did Congress mean by granting the States such authority? This supposed grant of authority to the States provides that: "An authorized recipient of personal information (except a recipient under subsection (b)(11) or (12)) may resell or redisclose the information only for a use permitted under subsection (b)."

If this is in fact a grant of authority it is clearly written as a restriction solely upon the recipient's ability to resell the data in question. Congress simply limited the persons to whom "authorized recipients" can resell their data to – one who intends to use the data for an enumerated purpose. The statute does not say "a State may authorize certain individuals to obtain data for resale and those entities may resell or re-disclose the information only for a use permitted under subsection (b)" nor include other language directly authorizing entities or individuals to obtain motor vehicle record data for resale. Yet, that is how the *Russell* courts interpreted this phrase. So again, was this really what Congress meant by its wording of section 2721(c)?

Both the District Court in this action and the courts in *Russell* rejected the notion that "authorized recipient" means a recipient who was authorized *by the*

*DPPA* to receive motor vehicle records. Both courts insist that this provision refers to a grant of authority by a State or one of its agencies. But it would not make sense for this provision to refer to a situation where a State has simply insured that a recipient has obtained the drivers license data in accordance with the DPPA – i.e., where a State merely requires that a recipient certify that it itself will use the data in accordance with the DPPA. If this were the case, this provision would have no meaning separate from the meaning presented by Plaintiffs. However, according to *Russell,* this provision refers to a State granting authority upon a person to obtain the data solely to resell it, presumably by examining certain recipients and deciding which ones are sufficiently trustworthy to purchase data to resell it to others.[39]

None of Resellers asserted in the lower court that they were "authorized recipients" as that term was construed by the District Court and the *Russell* cases.[40] It was merely noted that the "Texas DPS has determined that it may sell driver information in bulk to purchasers *that certify a permissible intended use*." (R-01, pg. 933) There is a very good reason why Defendants have not asserted that they

---

[39] *Russell v. ChoicePoint Services, Inc.* 300 F.Supp.2d 450 at 457 ("The inclusion of the term "authorized recipient" and the exclusion of any reference to "users" in DPPA § 2721(c) indicates an intent on behalf of Congress to delegate authorization to the states and thereby permit personal information resellers like ChoicePoint who are authorized by the state or its DMV *to obtain drivers' personal information for the purpose of redistribution* to persons with 'permissible uses.'")

[40] *See* Consolidated Motion to Dismiss (R-01, pg. 933) ("Pursuant to that authority, the Texas DPS has determined that it may sell driver information in bulk to purchasers that certify a permissible intended use.")

are "authorized recipients" as understood in the context of the *Russell* holdings:

*The State of Texas has no process to "authorize" entities to obtain drivers license data solely for resale.*

> ### (iii) *Roberts v. Source for Pub. Data* correctly interprets the meaning of "authorized recipient" in section 2721(c) of the DPPA.

As explained above, the District Court's analysis mirrors that of the *Russell* decisions, including the refusal to follow the interpretation of the DPPA crafted by the Iowa Supreme Court in *Locate.Plus.Com, Inc. v. Iowa Dept. of Transp.* which concluded that the DDPA "does not permit disclosure to a nonuser, who only seeks information to redisclose it for use under a permitted purpose." *Id.* at 617. However, subsequent to the District Court's ruling in these actions, another federal district court has interpreted the DPPA in a manner consistent with the holding of the Iowa Supreme Court in *Locate.Plus.Com.*

In *Roberts v. Source for Pub. Data,* 2008 U.S. Dist. LEXIS 100628 (W.D. Mo., Dec. 12, 2008) the United States District Court for the Western District of Missouri, held that an "authorized recipient", as described in section 2721(c) of the DPPA, is a recipient that becomes authorized *only* by virtue of obtaining the information for a reason listed in section 2721(b) of the DPPA. *Id.* at *9-*10 (emphasis added). *This is exactly the argument that Plaintiffs are advancing in this brief.*

44

The plaintiffs in *Roberts* sued a Missouri public official and two private entities (Shadowcraft and Pubic Data) based on allegations that Shadowcraft had obtained a large database from the Missouri Department of Revenue containing information about plaintiffs, including their social security numbers, and then transferred this database to Public Data, who made the information, including the social security numbers, available for sale at its website, www.publicdata.com. *Id.* at *1. The *Roberts* plaintiffs alleged that these actions were in violation, *inter alia*, of their statutory privacy rights under the DPPA because section 2721(a)(2) prohibits the knowing disclosure of "highly restricted personal information," defined to include social security numbers, without the express consent of the person to whom the information pertains, unless one of four statutory exceptions applies. Id. at *4.

In response, the *Roberts* defendants contended that plaintiffs failed to state a claim for relief under the DPPA because they did not allege that defendants acted with an impermissible purpose for obtaining their information under the DPPA.[41] *Id.* at *4. Specifically, defendants argued that plaintiffs' complaint failed to allege an essential element of a DPPA claim - that defendants obtained or disclosed plaintiffs' information for an impermissible purpose under the DPPA. Defendants contended that under the DPPA, companies are not prohibited from re-selling and

---

[41] Defendants also contended that plaintiffs lacked standing to bring a cause of action under the DPPA.

re-disclosing information to individuals who have a permissible use, and therefore plaintiffs' allegations -- that defendants' purpose in obtaining and disclosing the information was to provide the information for sale to the general public -- cannot support a DPPA claim. *Id.* at *5-*6. The court in *Robert*s found defendants' arguments unavailing based on a plain reading of the statute. *Id.*

After the reviewing the statutory framework of the DPPA and specifically the four statutory exceptions to the general prohibition against obtaining or disclosing "highly restricted personal information"[42] the court in *Roberts* turned to an evaluation of defendants' contention that section 2721(c) of the DPPA allows for the re-sale or re-disclosure of personal information by a business entity, no matter the purpose for which that entity obtained the information, so long as the re-sale or re-disclosure is to individuals who have a permissible purpose for obtaining the information under section 2721(b). *Id.* at *8. In rejecting this contention the court in *Roberts* explained that:

> [s]ection 2721(c) does ***not*** create an additional exception to the DPPA's general rule of non-disclosure; it simply provides that once an "authorized recipient" obtains the personal information, that person or entity may only re-sell or re-disclose that information if that resale or re-disclosure is also for a purpose permitted under section 2721(b). *See* 18 U.S.C. §§ 2721(b) and (c). While the DPPA does not define "authorized recipient," it is clear from the context in section 2721(c) that an authorized recipient is one who has received the information pursuant to one of the 2721(b) exceptions.

---

[42] Those exceptions are located at section 2721(b)(1) (4) (6) and (9)

*Id.* at \*8-\*10 (emphasis in original). After carefully and thoroughly analyzing the wording of section 2721(c) the court in *Roberts* held that "[f]rom the context of section 2721(c), and the references therein to recipients being authorized under particular section 2721(b) exceptions, it is clear that a recipient becomes authorized only by virtue of obtaining the information for a reason listed in section 2721(b)." *Id.*

In reaching that determination, the court in *Roberts* expressly considered the holding in *Russell I* which had been brought to the court's attention by defendants.[43] In rejecting the *Russell I* court's analysis, the court in *Roberts* held that:

> [t]he *Russell* court's interpretation of section 2721(c) is inconsistent with the plain language of the DPPA, which makes it unlawful for business entities to "obtain . . . personal information . . . for any use not permitted under section 2721(b)[.]" 18 U.S.C. § 2722. Section 2722's prohibition on *obtaining* information for any purpose other than one listed in section 2721(b) makes no sense if under section 2721(c) a business entity is allowed to *receive* personal information for the purpose of re-selling or re-disclosing it to others whose uses would fall under exceptions in section 2721(b) -- a purpose for which there is no exception in section 2721(b). Congress could not have intended to prohibit *obtaining* personal information for a purpose not listed in section 2721(b) while at the same time authorizing the *receipt*

---

[43] Defendants cite to a district court decision from the Eastern District of Louisiana which basically holds that, because Congress used the phrase "authorized recipient," rather than "authorized user," in section 2721(c), Congress must have understood that some "authorized recipients" would be individuals or entities other than those who were authorized to use the information under an exception listed in section 2721(b). *See Russell v. ChoicePoint Servs., Inc. et al.,* 300 F.Supp.2d 450, 455-461 (E.D. La. 2004). *Id.* at \*11.

of personal information by entities who wished to use the information in a way not contemplated by that section. The words ***obtain*** and ***receive*** both indicate that one has taken or acquired possession of some thing. BLACK'S LAW DICTIONARY 1078, 1268 (6th ed. 1990); *Webster's II New College Dictionary* 756, 924-925 (Margery S. Berube *et al*. eds. 1995). Thus, an "authorized recipient" is one authorized to receive (or obtain) something; one who is prohibited from obtaining something cannot also be an "authorized recipient" of it.

*Id.* at *10-*11 (emphasis in original). In sum, the court in *Roberts* concluded that *Russell* misinterpreted section 2721(c) as allowing the States to "authorize" certain entities to obtain "motor vehicles records" solely to resell them.

Citing *Locate.Plus. Com*, the court in *Roberts* observed that Congress could have included an additional exception in section 2721(b) to allow business entities to obtain highly restricted personal information for the purpose of re-selling or re-disclosing it to others with permissible uses but that it did not do so. *Id.* at *11. Because there is no such exception, obtaining personal information for this purpose is not permitted under the DPPA. *Id.* at *12. The *Roberts* court also found that since section 2721(c) only allows "authorized recipients" to disclose personal information for a purpose permitted under section 2721(b), and because defendants were not "authorized recipients," their subsequent disclosure to others, no matter the reason, was not permitted under the DPPA. *Id.* citing 18 U.S.C. § 2721(c). Under this analysis, the court in *Roberts* found plaintiffs' allegations that defendants knowingly obtained and disclosed their highly restricted personal

information from the Missouri Department of Revenue for the purpose of selling it to the general public adequately stated a claim for relief under the DPPA because that purpose is not among the four reasons entities may lawfully obtain or disclose such information under section 2721(b).

The *Roberts* court's analysis of section 2721(c)'s interplay with the remaining provisions of the DPPA provides a logical and reasoned construction of these sections and offers a proper meaning of the term "authorized recipient". For that reason, Plaintiffs respectfully submit that the *Roberts* court's analysis of section 2721(c) should be adopted by this Court instead of the construction provided by the court in the *Russell* cases and by the District Court in this case. An adoption of that analysis will demonstrate that Plaintiffs have properly stated a DPPA violation claim against Resellers in this case and warrant a remand of this action to the District Court for resolution.

### C. Plaintiffs' Drivers Privacy Protection Act claims against Defendant should not have been dismissed for lack of standing.

The District Court also granted the Consolidated Motion to Dismiss on the basis that Plaintiffs lacked the requisite standing to assert their improper obtainment claims under the DPPA. A motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(1) challenges the subject matter jurisdiction of the court. In the absence of subject matter jurisdiction, federal courts lack the power to adjudicate claims. *See Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir.

1998). In determining whether federal courts have subject matter jurisdiction, the court must also consider whether the plaintiffs have standing. *See Center for Individual Freedom v. Carmouche*, 449 F.3d 655, 659 (5th Cir. 2006).

The Supreme Court has set forth three elements that must be met to constitute the irreducible constitutional minimum of standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136 (1992). First, the plaintiff must have suffered an "injury-in-fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of. In other words, the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id.* (internal quotations and citations omitted). Failure to establish any one of these three elements deprives the federal court of jurisdiction to hear the case. *Rivera v. Wyeth Ayerst Labs*, 283 F.3d 315, 319 (5th Cir. 2002).

Based on its analysis of Defendants' Rule 12(b)(6) challenges to Plaintiffs' claims, the District Court determined that Plaintiffs had failed to allege or plead any facts showing that Defendants (either Non-Sellers or Resellers) impermissibly obtained and/or used Plaintiffs' "personal information".  In specific, the District

Court held that Plaintiffs had not shown they suffered an "injury-in-fact", had not plead a causal connection between the alleged violations and the alleged harm, and had not demonstrated redressability. (RE, Tab J)

In reaching this result the District Court clearly misapplied *Lujan* in the context of analyzing an improper obtainment claim under the DPPA. The Court in *Lujan* stated that "the plaintiff must have suffered an "injury in fact"-*an invasion of a legally protected interest*." *Id.* at 560 (emphasis added). *Lujan* makes clear that the standing analysis is concerned with the violation of a legally protected interest – that is the injury required. In the case of the DPPA, Congress clearly recognized and created a legally protected interest to be free from having one's personal information contained in a motor vehicle record obtained without the requisite permissible statutory purpose. *See Pilcher v. UNITE*, 542 F.3d 380, 388 (3rd Cir. 2008) ("The DPPA provides redress for violation of a person's protected interest in the privacy of his or her motor vehicle records and the identifying information therein.") The DPPA is designed to protect personal information. *Parus v. Allstate Ins. Co.*, 2005 U.S. Dist. LEXIS 20183, 2005 WL 2240955 (W.D. Wis. Sept. 14, 2005) (citing 139 Cong. Rec. S15765 (1993)). It protects drivers' privacy by placing restrictions on the purposes for which personal information may be obtained, used, and disclosed. Under the DPPA, "improperly obtaining [a] plaintiff's information [*is*] an injury." *Id.*

In addition, section 2724(a) of the DPPA clearly confers a cause of action to "the individual" whose personal information from their motor vehicle records is at issue. *Id.* at 391. The invasion of each individual Plaintiff's privacy interest in their motor vehicle information by Defendants in this case was neither conjectural nor hypothetical (their private information was actually obtained by Defendants) and is the type of concrete and particularized injury required to confer standing.[44]

According to the Supreme Court, an injury may be found in the invasion of any interest that Congress has elevated to the status of an individual "legal right." *See Linda R.S. v. Richard D.* 410 U.S. 614, 617 n.3, 93 S. Ct. 1146, 35 L. Ed. 2d 536 (1973). ("Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute.") Thus, it is well-established that an actual or threatened injury sufficient to meet Article III's case-or-controversy requirement "may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Warth v. Seldin*, 422 U.S. 490, 500, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (citations and internal quotation marks omitted).

---

[44]*Parus v. Cator* 2005 WL 2240955, at 5 (W.D.Wis. 2005)("It is true that plaintiff has not alleged that he suffered injury as a result of defendant Kreitlow's obtaining his personal information. However, under the statute, improperly obtaining plaintiff's information was an injury. The Driver's Privacy Protection Act is designed to safeguard personal information. *See, e.g.,* 139 Cong. Rec. S15765 (1993) ("Easy access to personal information makes every driver in this nation vulnerable and infringes on their right to privacy.") (statement of Sen. Robb). If defendant Kreitlow obtained plaintiff's information in violation of the law, then he infringed upon plaintiff's privacy.").

To some degree, Congress may define an injury, for case-or-controversy purposes, where one may not have existed under the common law. *See Lujan*, 504 U.S. at 580 (Kennedy, J., concurring) For instance, in *Federal Election Comm. v. Akins*, 524 U.S. 11, 20-22 (1998) the Supreme Court held that the Federal Election Campaign Act created a right to information and, consequently, found an injury sufficient for standing purposes where the FEC allegedly failed to obtain and produce information in violation of the Act. The injury was found in the denial of the right to obtain (via the Act) financial information from a politically active private organization; a right solely secured by statute. *See id.*

Whether Plaintiffs seek actual damages in their complaint is also irrelevant to the standing inquiry. Plaintiffs have alleged that their legally protected privacy interests have been violated and that they are entitled to relief under the DPPA, which includes injunctive relief, liquidated damages and punitive damages. The Eleventh Circuit Court of Appeals has unequivocally held that a plaintiff need not establish actual monetary damages in order to recover liquidated damages under the DPPA. *See Kehoe v. Fidelity Federal Bank & Trust,* 421 F.3d 1209, 1216 (11th Cir. 2005). As such, Plaintiffs clearly have standing to pursue their claims whether or not actual damages are sought for the privacy violations at issue.

Concerning the second element of standing outlined in *Lujan*, Plaintiffs plainly alleged a causal connection between the invasion of their DPPA protected

privacy interests and the conduct of Defendants. Plaintiffs claimed that Defendants' actions in purchasing the entire Texas DMV database without a permissible purpose provided in the DPPA constituted an actionable privacy invasion. Defendants' conduct in that regard is fairly (and directly) traceable to Plaintiffs' claimed injury and is not the result of the independent action of a third party not before the court.

As to the last element of standing discussed in *Lujan*, a favorable decision on Plaintiffs' improper obtainment claims will definitely redress the injuries they suffered. Under the DPPA, liquidated and punitive damages are available to remedy violations of its provisions and district courts are authorized by the statute to fashion injunctive or other equitable relief to redress and prevent further unlawful privacy invasions. Given that Plaintiffs alleged DPPA violations met every element of the *Lujan* standing analysis, the District Court clearly erred in dismissing their claims on the basis of lack of standing.

## CONCLUSION

Plaintiffs have demonstrated that the District Court erred in dismissing their claims for relief pursuant to Rule 12(b)(6) and (b)(1). As to both Non-Sellers and Resellers, Plaintiff established that these Defendants knowingly obtained their personal information from a motor vehicle record for a purpose not permitted under the Act. In the case of Non-sellers that impermissible purpose was the bulk

obtainment of Plaintiffs' personal information for Defendants' business convenience, cost saving or continued use and in the case of Resellers that purpose was the obtainment of their personal information for resale or redisclosure. These facts stated legally cognizable claims for relief under the DPPA for which Plaintiffs had the requisite standing to pursue. Due to this, the District Court's Final Judgment should be reversed and remanded by this Court.

## **PRAYER**

Based upon the foregoing arguments and authorities, Plaintiffs request the Court to reverse the Final Judgment entered by the District Court in favor of Defendants and remand these actions for further proceedings. Plaintiffs additionally request the Court to award them costs incurred in this appeal and for such other and further relief as the Court deems suitable and just.

Dated: January 5, 2009

Respectfully submitted,

_____
ANDY TINDEL
State Bar No. 20054500
PROVOST✶UMPHREY LAW FIRM
112 E. Line Street, Suite 304
Tyler, Texas 75702
Tel: (903) 596-0900
Fax: (903) 596-0909
Email: atindel@andytindel.com

James Mark Mann
The Mann Firm
300 W. Main
Henderson, TX 75652

Gregory Blake Thompson
The Mann Firm
300 W. Main
Henderson, TX 75652

Jeremy Reade Wilson
The Corea Firm, PLLC
The Republic Center
325 North St Paul Street, Suite 4150
Dallas, TX 75201
Thomas Mathew Corea
The Corea Firm, PLLC
325 North St Paul Street, Suite 4150
Dallas, TX 75201

George A. Otstott
Otstott & Jamison, PC
4849 Greenville Avenue, Suite 1620
2 Energy Square
Dallas, TX 75206

Ann Jamison
Otstott & Jamison, PC
4849 Greenville Avenue, Suite 1620
2 Energy Square
Dallas, TX 75206

**ATTORNEYS FOR APPELLANTS**

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct paper copy of the foregoing Brief of Appellants, as well as a CD containing the Brief of Appellants, have been forwarded, via U.S. first class mail, on the 5th day of January 2009 to the following counsel:

**Please see list of parties and attorneys contained in the Certificate of Interested Parties for service list.**

_____
Sheri Peterson
Legal Assistant

# **CERTIFICATE OF COMPLIANCE**

Pursuant to 5th Cir. R. 32.2 and 32.3, the undersigned certifies this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7) and the typeface requirements of Fed. R. App. P. 32(a)(6) because:

1.   This brief contains contains 13,825 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B) (iii).

2.   The brief has been prepared in proportionately spaced typeface using Microsoft Word version 9.0 in Times New Roman, font size 14.

The undersigned understands a material misrepresentation in completing this certificate or circumvention of the type-volume limits in Fed. R. App. P. 32(a)(7) may result in the Court's striking the brief are imposing sanctions against the person signing the brief.

Dated: January 5, 2009

_____
ANDY TINDEL
Attorney for Plaintiffs/Appellants